**NUECES TRUST COMPANY, Appellant,**

v.

**Carlos R. (Buddy) WHITE, d/b/a E–Z Motors, Appellee.**

**No. 1255.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1978.

Max J. Luther, III, Corpus Christi, for appellant.

Bob J. Spann, Spann, Perry & Smith, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit to recover damages, both actual and punitive, caused by the alleged wrongful withholding of possession of a Manufacturer's Statement of Origin of a 1975 Cadillac automobile, the wrongful withholding of a Certificate of Title to the automobile, and the wrongful assertion of a lien against the same. Suit was instituted by Carlos T. (Buddy) White, "d/b/a E–Z Motor Mobile Home Sales & Service", against Nueces Trust Company in the District Court of Nueces County, Texas, on May 13, 1976. Nueces Trust filed a general denial in the action brought against it by White; it filed a cross action against White to recover the balance ($6,336.36) alleged to be due it on a note executed in its favor by Gary Hardee, who was alleged to have been a partner in E–Z Motor Company on the date the note was signed; it further filed a third party action against Gary Hardee. Trial was to the court sitting without a jury.

Judgment was signed on May 6, 1977. Under the terms of the judgment, Nueces Trust was directed to deliver the Certificate of Title to the Cadillac automobile in question to White "with all liens or security interest shown in favor of said Nueces Trust Company properly released by an authorized officer of said defendant"; it was further provided in the judgment that "damages shall accrue at the rate of Fifteen Dollars ($15.00) per day from date of judgment so long as the above mentioned Certificate of Title is withheld from the plaintiff"; in addition, White was awarded $2,000.00 as actual damages incurred to date of judgment, and $2,000.00 as punitive damages. The judgment further denied Nueces Trust all relief sought by it against White on its cross action and awarded Nueces Trust a recovery of $6,000.34 against Gary Hardee. Nueces Trust still withholds the Certificate of Title from plaintiff White.

Nueces Trust appeals only from that portion of the judgment which awarded damages to White. It does not bring forward a point of error which challenges that portion of the judgment which directed it (Nueces Trust) to deliver the Certificate of Title to the Cadillac to White with all liens shown thereon in favor of Nueces Trust released, nor does it complain by a point of error relating to the denial of the relief sought by its cross action against White. Hardee did not appeal from that portion of the judgment which was adverse to him.

■ Where a statement of facts has been filed but neither findings of fact nor conclusions have been requested nor filed, as is the case here, the appellate court may affirm the judgment of the trial court on any legal theory supported by the evidence. We apply that rule to this appeal.

Formal demand for the return of the Manufacturer's Statement of Origin of the Cadillac was made on Nueces Trust by White on October 17, 1975. Nueces Trust refused to return the same. Formal demand was made on White by Nueces Trust on December 31, 1975 for the payment of the net balance, "including sales tax and license expense paid", due on the note which was executed by Hardee on February 21, 1975. White refused to pay such balance.

In its first point of error, Nueces Trust asserts that the trial court erred in failing to grant said motion since the partnership between Hardee and White was "admitted as a matter of law". We do not agree.

White alleged that he was the owner of the Cadillac automobile here involved at all times material to this lawsuit; that he was informed that Nueces Trust had loaned money to Gary Hardee who purported to be a partner in E–Z Motor Company, the name in which the title to the Cadillac had been issued by the dealer; that Nueces Trust claimed a lien on the automobile because of the loan to Hardee; that he advised Nueces Trust that Hardee did not have any authority to create a lien on the automobile, and that Nueces Trust's possession of the original Statement of Origin of Title was unlawful and that such possession deprived him (White) of the right to sell or trade the automobile at its most advantageous market price. White demanded a return of the original Statement of Origin of Title, which was refused by Nueces Trust.

In a verified cross petition and third party petition, Nueces Trust alleged that White and Hardee were partners doing business under the name of E–Z Motor Company; that on or about February 21, 1975, Hardee, acting as a partner for E–Z Motor Company, executed and delivered to Nueces Trust a promissory note in the original sum of $6,336.36, which was secured by a security agreement or mortgage on the automobile in question; that Hardee made certain payments on the note in the total amount of $528.04, but failed to pay any of the installments which became due after July 1, 1975, whereupon Nueces Trust declared the balance on the note to be due and payable. Nueces Trust prayed for a recovery of the balance ($5,808.32) due on the note, for foreclosure of its mortgage on the automobile, for costs, and for reasonable attorney's fees.

White, in his answer to Nueces Trust's cross petition, which was not verified but was sworn to on October 27, 1976 and filed the next day, denied that Hardee was ever a partner with him in any business, particularly in E–Z Motor Company. He further denied that he authorized Hardee to execute the note and security agreement described in the cross petition. Hardee did not file an answer to the third party petition. He did not testify in person at the trial, but portions of his deposition and answer to interrogatories were introduced into evidence over White's objections.

Trial commenced on March 11, 1977. After several witnesses called by both White and Nueces Trust testified, the trial was recessed until March 30, 1977, when it was resumed. At that time, which was before either party had rested or closed, Nueces Trust moved, by a written motion, that the court decree as a matter of law that a partnership existed between White and Hardee. In support thereof, Nueces Trust

asserted: 1) It (Nueces Trust) "by sworn pleadings, duly verified, and offered as evidence in this case, alleged the existence of a partnership between the cross-defendants, Carlos T. (Buddy) White and Gary Hardee"; 2) the existence of such a partnership was admitted by Gary Hardee in his deposition and in his answers to "Requests for Admissions"; and 3) "the existence of a partnership having been raised by the cross-plaintiff under oath and not having been denied by verified pleadings by the cross-defendant Carlos T. (Buddy) White", then under Rule 93(b) T.R.C.P., "the partnership must be deemed admitted as a matter of law".

The trial court, over objection by Nueces Trust, then permitted White to file a document, entitled "Amended Affidavit to Plaintiff's Answer to Defendant's Cross-Petition", which reads, as follows:

"My name is Carlos T Buddy White I am the plaintiff in cause # 76–1382–B Carlos T. White VS Nueces Trust Company and Cross Defendant. I have personal knowledge of the matter contained in Plaintiff's Answer to Defendant Amended Cross-Petition and state under oath that the allegations in such cross petition were verified by me under oath on the 27th day of October 1976 and state under oath today that the allegations contained in such pleading are true and correct. I further (sic) more state under oath that Gary Hardee has never been a partner in E–Z Motors nor a partner of mine nor was he authorized to borrow money in my name or the name of E–Z Motor from Nueces Trust Co or execute a security agreement or note on the car involved

/S/ Buddy White

Sworn to and subscribed before me the under signed Notary Public by 'Buddy' Carlos T White this 30th day of March 1977.
(SEAL)

/S/ Shirley J. Morrison
Shirley J. Morrison

/S/ Notary Public In and for Nueces County, Texas"

Nueces Trust objected to the filing of the "amended affidavit" on the sole ground that the attempted amendment came at an improper stage in the proceedings because: "the verification was filed after the filing of plaintiff's motion to deem the partnership admitted under Rule 93". Nueces Trust did not object to the *form* or *substance* of the verification in the "amended affidavit". On appeal, Nueces Trust urges for the first time that the affidavit is defective for the reason that the second sentence in the affidavit verifies Nueces Trust's amended cross-petition and not White's cross-answer to the amended cross-petition. The caption of the document in question, in effect, states that it is an amendment to the affidavit contained in White's answer to the cross-petition filed by Nueces Trust. In the first sentence of the "amended affidavit", White states that he is the cross-defendant in the cause. In the next sentence, while he does state that he has personal knowledge of the matters contained in his answer to the cross-petition, he further states he verified the amended cross-petition, on October 27, 1976. The only pleading sworn to and subscribed by White on that date which has been filed in this case is his *answer* to the amended cross-petition. The record shows that the amended cross-petition was filed on October 18, 1976; was signed by the attorney for Nueces Trust; and was verified by the President of Nueces Trust. White does not thereafter refer to the amended cross-petition but only as to the instrument which verified "such pleading". In the third and final sentence of the amended affidavit, White again denies the existence of the partnership between himself and Hardee. We conclude from a reading of the instrument as a whole that White intended to and did verify his amended cross-answer, and not Nueces Trust's amended cross-petition. The use of the words "cross petition" in the "amended affidavit", instead of the words "answer to the cross petition" was due to inadvertence.

Nueces Trust did not point out the pleading defect to the trial judge as re-

quired by Rule 90, T.R.C.P. As already stated, the only complaint was that the "amended affidavit" was filed at an improper time. The failure to point out a pleading defect to a pleading amendment results in waiver of such defect. *Steahr v. Clark*, 535 S.W.2d 39, 41 (Tex.Civ.App.—Austin 1976, no writ); *Mizell Construction Company and Truck Line, Inc. v. Mack Trucks, Inc.*, 345 S.W.2d 835, 838 (Tex.Civ. App.—Houston 1961, no writ). A party cannot complain of a pleading defect for the first time on appeal. *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652, 654 (Tex.Sup.1967); *Gonzalez v. Regalado*, 542 S.W.2d 689, 692 (Tex.Civ. App.—Waco 1976, writ ref'd n. r. e.). We hold that the trial court did not err in refusing to deem the partnership between White and Hardee admitted as a matter of law. Additionally, the partnership was not established as a matter of law against White on the basis of Hardee's assertions that a partnership existed. *Robinson v. First Nat. Bank of Marietta*, 98 Tex. 184, 82 S.W. 505, 506 (1904); *North Texas Lumber Company v. Kaspar*, 415 S.W.2d 470, 474 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); C. McCormick & R. Ray, Texas Law of Evidence § 1167 p. 60 (1956). Nueces Trust's first point of error is overruled.

Nueces Trust, in its second and third points of error asserts that the trial court erred in awarding $2,000.00 as actual damages to date of judgment (point 3), and in awarding $2,000.00 as exemplary or punitive damages (point 2), on the ground that such awards are against the great weight and preponderance of the evidence. Neither point can be sustained under the record here presented.

White had full possession and use of the Cadillac automobile in question at all times pertinent to this appeal. According to his testimony, he was the sole proprietor of E–Z Motor Company, a business which sold mobile homes, for a number of years prior to 1975. E–Z Motor's operation had grown to the point where White invested and borrowed sums of money freely. He was accustomed to borrowing large sums of money in order to finance his operations. Nuec-

es Trust Company is a finance company that makes many automobile loans. It had made several loans to one Gary Hardee prior to February 21, 1975. It had never done any business with White. In late 1972 White became acquainted with the same Gary Hardee under an arrangement wherein Hardee would, on occasion set up on location mobile homes, sold by White. White testified that because Hardee was performing this function during this period of time he was given access to White's office at the E–Z Motor Company. The Statement of Origin and Certificate of Title of a vehicle owned by E–Z Motor Company were kept in filing cabinets in its office. The filing cabinets were not locked. In December, 1974, White purchased a 1975 Cadillac, hereinafter referred to as the "Cadillac" for use by E–Z Motor. White testified that he preferred new Cadillacs for their "prestige value" and it was a practice to keep one for approximately a year and then trade it in on a newer model. He further testified that Hardee was allowed use of the Cadillac on several occasions on the assumption that Hardee would use it to set up an office trailer which he had purchased from E–Z Motor.

On February 21, 1975, Hardee came to the office of the Nueces Trust in possession of and driving the Cadillac in question. He also had in his possession and presented to James L. Vinyard, an officer of Nueces Trust the original of the Manufacturer's Statement of Origin to the automobile. The Cadillac had been assigned to E–Z Motor by Bailey Cadillac, of Corpus Christi, on December 16, 1974. Vinyard testified that he examined the car, compared the Manufacturer's Statement of Origin of the motor vehicle with the vehicle driven by Hardee and determined that the serial numbers were the same. Hardee then executed in Vinyard's presence a promissory note and Security Agreement dated February 21, 1975, which note was made in the name of E–Z Motor Company by Gary Hardee, a partner. Based upon this promissory note secured by the mortgage on the Cadillac, Nueces Trust loaned $5,000.00 to Hardee.

The proceeds of the loan were delivered to Hardee in two checks, each dated February 21, 1975, in the amount of $3,000.00 and $2,000.00, respectively.

There is a conflict in the testimony as to whether Gary Hardee was a partner in E–Z Motor Company at that time and whether Hardee had authority to use the Cadillac as collateral to borrow money. Hardee, by deposition, over White's objection, testified that he and White agreed to go into business together in the E–Z Motor Company; that White needed a small amount of cash; that borrowing a small amount was embarrassing to an established businessman; that White gave Hardee the Statement of Origin to the 1975 Cadillac and told him to borrow money upon it. He further stated in his deposition that he gave the $2,000.00 check to White and spent the rest on the business. White testified that he was never in partnership with Hardee; that Hardee was not authorized to use the Cadillac for security; that he accepted the $2,000.00 check in payment for an office trailer sold to Hardee; that he did not know that the check represented part of the money received by Hardee relating to the loan; that Hardee had no authority to take the Statement of Origin for the Cadillac from the office file; and that he did not discover what Hardee had done until he attempted to sell the car later in the year.

Elmore Volesky, called by Nueces Trust, testified that he was hired by White and Hardee to work at E–Z Motor Company during the period in question; that White and Hardee would direct him in driving trucks, pulling mobile homes and other tasks; that Hardee paid him by check for work done for E–Z Motor Company; that he overheard conversations between Hardee and White discussing details of the business such as how to get trucks, where to put trailer homes and other matters. He had no independent recollection of the specific details concerning these checks.

White testified that Hardee was in the business of moving, rebuilding, and remodeling mobile homes for insurance companies and that during this period of time Volesky assisted Hardee in making the office operational. Vinyard testified that he had known Hardee for more than ten years; that Nueces Trust had loaned Hardee money in the past to repair trailers, and that in so doing the loans, in some instances, were secured by liens on the particular trailer for the money loaned.

The note payments were not kept up. Vinyard said that he telephoned White around August 1, 1975. Vinyard called White in regard to the delinquent payments, and, according to Vinyard, White informed him that he had authorized Hardee to borrow the Cadillac to use as collateral for the loan. White's recollection of the telephone call was different; he recalled that Vinyard phoned him in an attempt to reach Hardee and informed him that Nueces Trust had title to the Cadillac. White further stated that he demanded the immediate return to him of the Manufacturer's Certificate since he "didn't authorize Gary or anybody else to borrow any money on the car" and that Vinyard responded ". . . I'll have to let you know or call you back or something". White further testified that Vinyard had already informed Bailey not to trade with White, since the Cadillac had a lien on it with Nueces Trust.

On October 17, 1975, White's attorney sent the attorney representing Nueces Trust a letter advising that Hardee had never been a partner in E–Z Motor and had never had "any right to use the title of this Cadillac for the purposes of securing a loan". Demand was made "for the return of the manufacturer's certificate of origin which was taken from Buddy White without authorization and accordingly, is stolen property". The letter further advised:

". . . We feel that your clients will be subject to punitive damages because they are exercising possession and control over certificate of ownership which has never been signed off by anyone and was not signed at the time that they apparently loaned some money to one Gary Hardy and were dealing with persons who had no authority bind the vehicle or the owner, Buddy White."

Nueces Trust refused to return the Statement of Origin, and, in November, 1975 sent the Manufacturer's Statement of Origin, an application for a Certificate of Title, and other documents pertinent thereto to the proper authorities in Austin, Texas. A "Texas Certificate of Title" was issued on November 3, 1975. It showed "E–Z Motor Co." to be the owner of the Cadillac and that "Nueces Trust Co." had a lien thereon. The Certificate of Title was in the possession of Nueces Trust at the time of trial.

We first dispose of the third point of error asserted by Nueces Trust that the award of $2,000.00 as actual damages to date of judgment is against the great weight and preponderance of the evidence. Evidence relating to actual damages is found in the testimony of White and Mr. Wendall Keach, a Bank Loan Officer for Citizens State Bank of Corpus Christi, Texas.

White testified that the Cadillac had a market value of about $12,000.00 when he bought it, and that in February, 1975, when Nueces Trust made the loan to Hardee, that it, due to depreciation, was worth about $11,000.00. He commenced discussions with Bailey Cadillac of Corpus Christi, Texas, in late July, 1975 about trading the car in on a new 1976 model and then learned that Nueces Trust had the Manufacturer's Statement of Origin of the 1975 Cadillac in its possession. As a consequence, he was unable to make the trade. White estimated that a 1975 Cadillac, such as the one here involved, without any special consideration of mileage and use, would trade in on a similar automobile for $2,500.00 to $3,500.00 more in September, 1975 than it would at the time of trial (March, 1977). He further testified that the automobile in question depreciated $2,500.00 the first year and $3,000.00 the second year, so that at the end of two years from the date of acquisition, the car would be worth $5,500.00 less than its original purchase price · of $12,000.00. He summed up his loss by stating that he lost about $3,500.00 when it became impossible to trade in August, 1975. On cross examination, he placed his loss at varying amounts, ranging from $2,500.00 to

$6,500.00. He further stated on cross examination that Bailey Cadillac, at the time in question, "offered to trade me a brand new '76 for twenty-five hundred difference".

Mr. Keach was called as a witness by Nueces Trust. He testified that an automobile depreciates "by model year regardless of whether it has use on it or not". He further testified that a 1975 Cadillac El Dorado depreciates about $1,000.00 the first year and about $1,500.00 the second year. Concerning the loan value of a 1975 Cadillac El Dorado that has 10,000 miles on it and one that has been driven 39,000 miles, he said that the difference would be "five to six hundred dollars" without taking the model year into consideration.

The actual damages ($2,000.00) awarded to date of judgment (May 6, 1977) were within the range shown in the record. It is not essential that the trier of fact conclude that one set of facts in evidence is absolutely correct and that another is totally incorrect. All that is required is sufficient certainty upon which the award of damages may be based. While some evidentiary basis for computation of damages must exist, the trier of fact is not required to determine the amount of damages with mathematical exactness. See *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943); *Arabesque Studios, Inc. v. Academy of Fine Arts International, Inc.*, 529 S.W.2d 564 (Tex.Civ.App.—Dallas 1975, no writ). There is ample evidence to support the award of $2,000.00 as actual damages to date of judgment. Such an award is not against the great weight and preponderance of the evidence. The third point is overruled.

The disposition of the second point of error asserted by Nueces Trust that the award of $2,000.00 as punitive damages was against the great weight and preponderance of the evidence requires a further discussion of the evidence. There is substantial evidence that White was the sole owner of E–Z Motor at all times pertinent to this appeal. The deposition testimony of Har-

dee that he was a partner in E–Z Motor Company, even if admissible, created no more than a fact issue, which was resolved by the trial judge, trier of fact in this case, against Nueces Trust.

It was said in *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 712 (1943):

"In order that a recovery of exemplary damages may be sustained, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a degree of 'gross negligence' which approximates a fixed purpose to bring about the injury of which the plaintiff complains. . .

\* \* \* \* \* \*

". . . Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it."

However, it is not necessary to prove an evil intent in order to recover exemplary or punitive damages for "a defendant may be compelled to respond in exemplary damages if the act causing actual damages is a wrongful act done intentionally in violation of the rights of the plaintiff". *Tennessee Gas Transmission Company v. Moorhead*, 405 S.W.2d 81 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.).

Unquestionably, Nueces Trust acted wrongfully and intentionally, and should have foreseen the loss of which White complains. Initially, Nueces Trust loaned a substantial amount of money to Gary Hardee on the strength of Hardee's representation that he was a partner in E–Z Motor Company and that he had authority to procure the loan and to mortgage the Cadillac. This was done without making further inquiry into the matter. There was no attempted verification of Hardee's representation until problems arose with respect to payment of the note, and at a time when a

proposed disposition of the Cadillac by White became imminent. Vinyard claimed that White told him over the phone in August, 1975, that he (White) had authorized Hardee to borrow money on the car. White flatly denied the making of this statement and stated that he informed Vinyard at that time that Hardee had never been a partner in E–Z Motor Company and that he (Hardee) had no authority to act in such capacity at the time in question. There is no showing that Nueces Trust did anything in a bona fide effort to determine whether or not White was, in fact, the sole owner of E–Z Motor Company and of the Cadillac in February, 1975, when the note was signed. There is no evidence that Nueces Trust requested that it be allowed to examine the books of E–Z Motor Company to determine the true ownership of the business and the automobile. White's accountant testified that he filed the tax returns for the business and that the returns showed the business to be the sole proprietorship of White; he was not interviewed by Nueces Trust. The State Dealership Records reflect that White is the sole proprietor of E–Z Motor Company. The custodian of those records was not contacted by Nueces Trust. Instead, Nueces Trust doggedly stood its position, which at best was based on its own surmise that Hardee had proper authority to act in the matter. Nueces Trust, following the telephone conversation between Vinyard and White in August, 1975 and the receipt by its attorney of the letter from White's attorney in late October, 1975, took steps in early November, 1975 to fortify its position by sending the Statement of Origin to the Cadillac to the Department of Public Safety in Austin and obtaining a Certificate of Title thereon which showed a lien in its favor.

It is undisputed that from the time of the telephone conversation between Vinyard and White about August 1, 1975 to the time of trial that Nueces Trust made no attempt to learn the true nature of the business relationship between White and Hardee at the time the note and the accompanying security agreement were executed by Har-

dee. The evidence, when viewed as a whole, shows that Nueces Trust was "consciously indifferent" to the rights of White and E–Z Motor Company in the premises. While good faith may generally protect one from assessment of punitive damages, this is not the case here. It is not shown that Nueces Trust had any reasonable ground for any belief that Hardee had authority in the matter.

Nueces Trust contends that it sought advice of counsel at all times pertinent to this lawsuit. It argues that acts pursuant to advice of counsel exempt it from liability for punitive damages. We do not agree. The applicable general rule is set out in 25 C.J.S. Damages § 123(7) p. 1146–7 (1966), as follows:

". . . Advice of counsel, if in good faith, is proper for the consideration of the jury in connection with the question of exemplary damages, and the fact that defendant acted under advice of counsel may be sufficient to prevent an award of such damages. Advice of counsel is no defense, however, unless the advice was requested in good faith and on full disclosure, and was given in good faith with respect to a course involving legal questions and not questions of common morality; and the advice of counsel that defendant had the right to do the act complained of will not protect him from exemplary damages if it is done in a wanton and offensive manner, and in fact maliciously."

See also *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968); *Perkins v. Stephens*, 131 Mont. 138, 308 P.2d 620 (1957).

■ Assuming, arguendo, that it is proper to infer that Nueces Trust acted upon the advice of counsel in withholding from White the Certificate of Title free of encumbrance until the time of trial, nevertheless, that circumstance alone does not require a reversal in this case of the trial court's judgment with respect to the award of punitive damages. The fact that Nueces Trust may have acted on the advice of counsel may be considered as a circumstance tending to show good faith. See *S.*

*Jacobs, Bernheim & Co. v. Crum*, 62 Tex. 401 (1884); 17 Tex.Jur.2d, Damages § 181 p. 249 (1960); *Perkins v. Stephens*, 131 Mont. 138, 308 P.2d 620 (1957). It is however, only one of the circumstances to be considered in the award of punitive damages; it does not establish a defense thereto as a matter of law. Even after the August 1, 1975 phone conversation between Vinyard and White, Nueces Trust continued to rely entirely upon the representations of Gary Hardee. Since it was then fully advised of White's contentions, its acts thereafter were done in knowledge of the harm that would result to White from the inability to trade in the automobile at the time he desired to make the trade. *Scalise v. National Utility Service*, 120 F.2d 938 (5th Cir. 1941); *Hannahs v. Noah*, supra.

■ Upon a review of all the evidence in the record, we hold that there is a factually sufficient basis for an implied finding that Nueces Trust wrongfully withheld title in total disregard of White's right to possession of evidence of ownership after it had been notified of White's unqualified assertion of complete ownership of the Cadillac. The award of $2,000.00 as punitive damages is not against the great weight and preponderance of the evidence. The second point is overruled.

■ Nueces Trust, in its fourth point of error, contends that the trial court erred in awarding damages at the rate of $15.00 per day from date of judgment so long as the Certificate of Title to the Cadillac is withheld from White because such an award was "against the great weight and preponderance of the evidence". The only argument relating to the point is that the trial court, in awarding such damages, committed error "for there is insufficient evidence" to support such an award.

The award is in the nature of exemplary or punitive damages. Nueces Trust was ordered to deliver to White the Certificate of Title to the Cadillac "with all liens or security interest shown in favor of said Nueces Trust Company properly released by an authorized officer of said defendant". That portion of the judgment was not at-

tacked in this appeal, and is now final. Nueces Trust, at all times, had the absolute power and right to terminate the accumulation of such damages by the simple expedient of releasing the lien which is shown in its favor on the face of the Certificate of Title and delivering the Certificate with lien released to White. It chose not to do so. No attack is made on the award as being excessive. Fundamental error does not appear in the record. We consider the point and argument strictly in accordance with the language used by Nueces Trust in its brief. There is ample evidence to support the award when challenged by the ground asserted in the fourth point of error. The award is not against the great weight and preponderance of the evidence. The fourth point is overruled.

White, in a cross point, contends that this Court should award "additional damages to the appellee Carlos T. White for attorney's fees incurred in defending the appeal as an additional element of exemplary damages". We do not agree. We have carefully considered the cross point and the argument thereunder. The cross point is overruled.

The judgment of the trial court is AFFIRMED.