**BEACON NATIONAL INSURANCE COMPANY, Appellant,**

v.

**Ken Dell REYNOLDS, Appellee.**

**No. 02–88–253–CV.**

Court of Appeals of Texas,
Fort Worth.

Oct. 16, 1990.

**392**

Joe E. Shaddock, Wichita Falls, for appellant.

Schenk & Sanders, Dean A. Sanders, Wichita Falls, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and LATTIMORE, JJ.

## OPINION

WEAVER, Chief Justice.

Ken Dell Reynolds, appellee, sued Beacon National Insurance Company, appellant, for breach of an insurer's duty of good faith and fair dealing. The case arose out of the appellee's efforts to collect for the loss of two Suzuki four-wheelers under a homeowner's insurance policy alleged to have been written and issued by appellant. Appellant's motion for an instructed verdict and its motion for judgment n.o.v., based on the assertion that the appellee sued the wrong defendant, were overruled. Based on the jury's answers to special issues, the trial court granted judgment in appellee's favor for $1,800.00 actual damages and $50,000.00 exemplary damages. Appellant has perfected this appeal and raises ten points of error. We affirm.

Under its first three points of error, appellant contends that the insurance policy in question was not issued by the appellant but was issued by First Preferred Insurance Company, who was not made a defendant in the lawsuit, and that the appellee simply sued the wrong defendant and proved no cause of action against the appellant.

This case involves a situation not uncommon in the insurance industry whereby various insurance companies form an insurance group through which each of the participating companies issues insurance policies, and where, as here, the defendant insurance company against whom the suit was filed claims it did not issue the policy, that the policy was issued by another member of the group, that the insured sued the wrong party and that the defendant company who was sued was not liable. The question before us is whether the defendant insurance company which was sued can avoid liability under the policy sued upon by raising this issue by a motion for an instructed verdict after the plaintiff has rested, as the appellant attempted to do in this case, or whether it must raise the issue by a verified plea under Tex.R.Civ.P. 93.

Appellant's assertion that appellee had sued the wrong defendant was not called to the trial court's attention until the appellant filed its motion for a directed verdict after appellee had rested, following two and one-half days of trial. The trial court severely criticized the appellant's attorney for raising this issue for the first time at this stage of the trial, after extensive discovery procedures had been conducted and at least two pretrial conferences had been held during the twenty months the case had been pending. In response to an inquiry by the trial court, concerning whether the appellant had raised this point by a verified plea under Rule 93, the attorney for appellant stated that it was raised by paragraph 2 of appellant's First Amended Original Answer filed on February 17, 1988. When the trial court indicated that this language did not allege a defect of parties the appellant's attorney stated that if "we didn't issue the policy, that is a special denial of the policy."

The trial court on its own motion struck appellant's First Amended Original Answer, for not being timely filed, and stated that "[t]here is now no verified pleading under Rule 93 alleging a defect of parties." The trial court then permitted the appellee to reopen the evidence, proceeded with the trial, and heard testimony outside the presence of the jury. The appellant called no witnesses. At the close of the testimony, the appellee elected not to take a nonsuit and to proceed to judgment.

Judgment was entered by the trial court in favor of appellee against Beacon National Insurance Company, First Preferred In-

surance Company, Petrolia Insurance Company and/or any of them and/or Beacon Insurance Group. This appeal was perfected only by the appellant, Beacon National Insurance Company. Portions of the recitals and findings contained in the judgment are here set forth:

Beacon National Insurance Company, Defendant, appeared by a corporate officer of Beacon Insurance Group which is composed of Beacon National Insurance Company, First Preferred Insurance Company and Petrolia Insurance Company, and by attorney, and announced ready for trial....

... The Court specifically finds that the Defendant, Beacon National Insurance Company, never raised any defect of parties pursuant to Rule 93, T.R.C.P. The Court further finds that the Beacon Insurance Group includes Beacon National Insurance Company, First Preferred Insurance Company and Petrolia Insurance Company, and that although different entities may be named in some policies of insurance, the three entities composing the Beacon Insurance Group are for purposes of management, management decisions, and all decisions having to do with the representation of any of them in this cause, controlled by the same corporate officers, and that the same decisions were made in this case as would have been made if any other of the companies composing the Beacon Insurance Group, or Beacon Insurance Group itself had been named as Defendant herein.

These findings are well supported by the evidence. B.D. Loving, the Executive Vice President of Beacon Insurance Group and of each of the companies composing the group, testified that the group is composed of three companies, Beacon National Insurance Company, First Preferred Insurance Company and Petrolia Insurance Company, the latter two of which are owned by, and the figures for which are included in the balance sheet of, Beacon National Insurance Company; all of these companies have the same officers and are manned by the same personnel; they all have the same address, and correspondence pertaining to policies issued by any of the companies is sent under the letterhead of Beacon Insurance Group; claims for all of the companies are processed by the same personnel; citations for lawsuits filed against any of the companies are served on the same person; and that the distinction between these companies was merely one on paper. Loving further testified that the fact Beacon National Insurance Company and not First Preferred Insurance Company was sued in this case did not in any way prejudice the company in the development, investigation, and litigation of the claim; that everybody at the group that needed to know was cognizant of the facts involved in the lawsuit and was not misled in any way because of the technical party that it was filed against, nor were they placed at a disadvantage in obtaining relevant evidence to defend the suit; that, practically speaking, in terms of how they ran their day-to-day business at the group, it does not matter whether Beacon National Insurance Company, Beacon Insurance Group, or First Preferred Insurance Company had been included in the lawsuit as the nominal defendant; and that it would not affect how the claim was handled no matter what company was named in the petition. Appellant's trial counsel implied he represented both Beacon National Insurance Company and First Preferred Insurance Company, and stated that he knew this was a suit against the wrong party when he got the citation, which was apparently before he filed the original answer for appellant on July 14, 1986.

The insurance policy involved here was issued on a form which was headed "TEXAS STANDARD HOMEOWNERS POLICY." On the first page of the policy the name of the group, The Beacon Insurance Group, appears in bold letters. To the left of that name appears the names of the three companies composing the group, being Beacon National Insurance Company, First Preferred Insurance Company and Petrolia Insurance Company, and immediately to the left of each of those names appears a square or a "box." Immediately beneath the names of the three companies

there appears, in small print, the words "COVERAGE IS PROVIDED BY THE COMPANY INDICATED BY" followed by a square or a "box" with an "X" in the center. Two copies of the policy are contained in the record before us, both of which were introduced by the appellee. Plaintiff's exhibit 6 is a copy of the policy furnished to appellee by his insurance agency following the loss of the property. Plaintiff's exhibit 8 is the copy of the policy initially furnished to appellee, with the original having been sent to the mortgagee. Neither of these copies reflect an "X" entirely within the box adjacent to any of the names of the companies in the group. Each of the copies shows two "X's" (not in exactly the same location on the two copies) which are either partially in or are touching the box adjacent to the name of First Preferred Insurance Company. There is no testimony to the effect, nor was there any contention by appellee at the trial, that the location of these "X's" on these copies of the policy confused or misled the appellee as to the correct name of the issuer.

Appellee argues, in response to the first three points of error, that there is sufficient evidence to support a judgment that appellant, Beacon National Insurance Company, issued the policy in question. He did not urge before the trial court that appellant executed the policy, but only argued that it had failed to deny its execution of the policy by a verified plea. Appellee also contends on this appeal that appellant failed to put on evidence that the policy was issued by First Preferred Insurance Company. However, it was the appellee's burden to prove the policy which he sued on. The record does not reflect any findings of the trial court, implied or otherwise, that appellant issued the insurance policy. Neither is there a specific finding by the trial court that the policy was issued by First Preferred Insurance Company. However, in light of the remarks made by the trial court, that a defect of parties has to be verified, and in light of the findings set forth in the judgment, that appellant never raised any defect of parties pursuant to Rule 93, and from a review of the record as a whole, we construe the judgment as holding that the policy was executed by First Preferred Insurance Company and not by appellant, but that appellant is estopped to deny its execution of the policy because it failed to make such denial by a verified pleading, and that appellee was therefore entitled to judgment against appellant on the policy.

■ Accordingly, we are compelled to reverse the judgment, unless we hold that appellant was required to call to appellee's attention, by a verified plea pursuant to Rule 93, the fact that it had sued the wrong party. Before determining that issue, we will discuss briefly the matters raised by appellee's testimony given outside of the presence of the jury and after the trial court permitted appellee to reopen the testimony. He testified that he understood that Beacon National Insurance Company issued his policy, that he called that company when he tried to get in touch with his carrier, that this is the company which he discussed with his agent, and that his premium checks were made out to, endorsed by and deposited by Beacon National Insurance Company.

In his correspondence to the State Board of Insurance regarding this claim, appellee stated that his policy was with The Beacon Insurance Co. A letter from the group's adjuster to appellee, stating that the loss was not covered under the policy, showed that a carbon copy of such letter was sent only to Beacon Insurance Co. However, the record does not indicate that the appellant or the group, during the handling of this claim, intentionally misled the appellee as to the correct name of the issuer of the policy, or withheld from appellee information showing that First Preferred Insurance Company was the issuer. A letter dated December 9, 1985, from the group to the State Board of Insurance regarding this claim, specifically showed that this policy had been issued by First Preferred Insurance Company, a copy of which letter was sent to appellee. The property loss notice which appellee's insurance agent, Clark Wheeler, sent to the company shows

that the policy was issued by First Preferred Insurance Co.

We also note that the attorney for appellant twice injected the name of First Preferred into the record during the trial by asking Loving, "Had First Preferred been sued over the motor vehicle exclusion in a prior case?" The trial court then asked, "Who is First Preferred?" to which appellant's attorney replied, "That is one of our insurance companies." Notwithstanding this exchange, which occurred after appellee had introduced into evidence both copies of the insurance policy, apparently neither the trial court nor the appellee's attorney picked up on the fact that the policy had been issued by First Preferred Insurance Company until after appellee rested and appellant made its motion for an instructed verdict.

Appellee further contends that appellant is estopped to deny liability under the policy because of Loving's response to a question as to why appellant denied coverage under the policy. Loving answered that it was because of the motor vehicle exclusion in the policy. He never indicated that coverage was denied because Beacon National Insurance Company did not issue the policy. The trial court made no specific finding on estoppel on this basis and there is no evidence in the record to support an assumed finding to that effect. We find this contention by appellee to be without merit.

Appellant cites us the following cases in support of points of error one through three: *Little v. Crum & Forster Group of Insurance Cos.*, 404 S.W.2d 347 (Tex.Civ. App.—Waco 1966, no writ); *Conrad v. Artha Garza Co.*, 615 S.W.2d 238, 240 (Tex. Civ.App.—Dallas 1981, no writ); *West Texas Util. Co. v. Pirtle*, 444 S.W.2d 202 (Tex. Civ.App.—Eastland 1969, no writ); *Morris v. Kasling*, 79 Tex. 141, 15 S.W. 226 (1890); *Miles v. Plumbing Svcs. of Houston*, 668 S.W.2d 509 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Garcia v. Employers Cas. Co.*, 519 S.W.2d 685, 689 (Tex.Civ.App.–Amarillo 1975, writ ref'd n.r.e.). While some of these cases appear to support appellant's arguments, we consider them distinguishable from the situation before us and we would point out that none of these cases hold that a verified plea under Rule 93 is not necessary in a fact situation like that here under review.

Appellant contends that the trial court confused a party's "capacity" to sue with a party's right to recover, and appellant devotes much of its argument to the proposition that appellee's suit was against the wrong defendant, that it was not a matter of appellant having been sued in the wrong capacity, and that, accordingly, no verified plea was required. While the cases dealing with the necessity of a verified plea respecting a party's capacity are not consistent, we believe that the holding by the supreme court in *Pledger v. Schoellkopf*, 762 S.W.2d 145 (Tex.1988) (per curiam) requires a verified plea by appellant in the present case. There, the supreme court held that assertions that the cause of action brought by the plaintiff was owned by another party must be raised by a verified plea under Rule 93(2). *Id.* at 146. We believe the same reasoning is applicable where, as here, the claim is that the obligations under the cause of action sued upon are owed by a party other than the one sued. Our conclusion is also supported by the opinion of the Texarkana court in *Union Nat'l Bank v. Moriarty*, 746 S.W.2d 249, 255 (Tex.App.—Texarkana 1987, writ denied), involving a fact situation very similar to that before us. That court stated that when a party contends that the proper party is one of its subsidiaries the issue should be raised by a verified plea under Rule 93(7).

We hold that appellant was required to raise, by a verified plea, a complaint that another member of its group issued the policy. Requiring the issue to be thus raised prevents a party from "laying under a log," as the trial court characterized it, abusing the system by knowingly failing to bring to the court's attention that it was not the correct party until perhaps limitations have run and thus inuring greatly to the benefit of another member of its group. The Texas Supreme Court has recently pointed out that when parties have intentionally confusing identities and close ties (such as here), limitations in fact will not

run but will be tolled "where no party is misled or placed at a disadvantage by the error in pleading." *Enserch Corp. v. Parker*, 794 S.W.2d 2 (Tex.1990). While the holding in *Enserch* is not directly in point on the issue before us, we feel that it lends further support to our decision in this case. Points of error one through three are overruled.

■ Under point of error four, appellant contends the trial court erred in striking its First Amended Original Answer. As pointed out above, appellant contends that it was not required to raise the issue that appellee had sued the wrong defendant by a verified plea, but apparently contends on this appeal, in the alternative, that if it was required to file such a verified plea that such requirement was met by its filing of its First Amended Original Answer which was stricken by the trial court.

The portion of the stricken answer relied upon by appellant for this purpose reads as follows:

This Defendant specially denies that it had a valid policy of insurance for Plaintiff insuring the property described in Plaintiff's Second Amended Original Petition and in force at the time of the incident causing Plaintiff's loss.

We hold that this general language, whereby appellant "denies that it had a valid policy of insurance ... insuring the property described ... in force at the time of ... loss," is not sufficient to set up any of the matters required to be pled under Rule 93. *See W.O.S. Const. Co. v. Hanyard*, 684 S.W.2d 675 (Tex.1985) (per curiam). Accordingly, we find no harm resulting from the striking of such answer, and the appellant does not argue on this appeal that any harm resulted from the striking of the answer. Point of error four is thus moot and is hereby overruled.

In point of error five, appellant complains the trial court erred in allowing the plaintiff to testify as an expert witness when he had not been designated as such in pretrial discovery. Point of error six contends there was no, or insufficient, evidence to support the jury's answer to special issue one concerning the market value

of the stolen property. During pretrial discovery, appellant identified Pete Perry as a potential expert witness who could testify as to the replacement value of the stolen four-wheelers. Perry did not testify at trial. Instead, appellee, over appellant's objections, testified to the "fair market value" of the four-wheelers at the time they were stolen.

■ Appellant is correct that experts not designated at least thirty days prior to trial may not ordinarily testify. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, (Tex.1989). However, appellee was designated in the interrogatory answers as one who would testify to the "value of vehicles." The owner of property may testify to the value of his own property. *See Mercedes–Benz of North America v. Dickenson*, 720 S.W.2d 844, 848–50 (Tex.App.—Fort Worth 1986, no writ).

■ As to the legal and factual sufficiency of the evidence, in determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evi-*

*dence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.* Appellee testified that the value of the four-wheelers at the time they were stolen was $900.00 each. There was no other testimony as to value, and appellant did not cross-examine appellee concerning value nor impeach that testimony. We hold there was some evidence, and indeed, sufficient evidence, to support the jury's answer of "$1,800.00" to special issue one. Appellant also argues, alternatively, that said "findings and conclusions were against the great weight and preponderance of the evidence." Such complaint is to be used when the party *with* the burden of proof complains of the jury's adverse findings. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Since the plaintiff had the burden of proof, we are ignoring these arguments as superfluous and redundant of the rest of point six. Points of error five and six are overruled.

Points of error seven through ten concern the question of exemplary damages. Appellant argues: there is no, or insufficient, evidence to support issues two and three; that $50,000.00 in exemplary damages is grossly excessive; and that it was error to exclude from the jury's consideration a letter from an attorney concerning whether the four-wheelers were covered by the policy in question. Point of error ten complains that it was error to refuse to permit the introduction of evidence of an attorney's opinion and case law that the policy in question did not cover the stolen four-wheelers. During trial, appellee called B.D. Loving as an adverse witness. Loving was, at the time of trial, Executive Vice President of Beacon National. As we stated earlier, at the time of appellee's

dispute with appellant over coverage, Loving was Vice President of the Loss Department and most of the correspondence in the record from or to Beacon National is signed by Loving or addressed to his attention. Appellant attempted to introduce before the jury a letter written by a Tyler attorney in March of 1986. The letter stated that the Texas Supreme Court had not decided the specific question of whether three-wheelers are motor vehicles. The attorney then discussed a case broadly defining "motor vehicle," and one from this court, delivered prior to appellee's loss, holding three-wheelers were not excluded under a homeowner's policy. The attorney concluded coverage could be denied for the four-wheelers, but that a jury verdict finding either way would be upheld on appeal. Appellant wanted to introduce the evidence as proof it was refusing coverage in good faith and in reliance upon the advice of an attorney. *See Nueces Trust Co. v. White,* 564 S.W.2d 798, 806 (Tex.Civ.App.—Corpus Christi 1978, no writ). However, *Nueces* requires the reliance upon advice of counsel to be in good faith. *Id.* The exhibits in the record indicate appellant did not seek the advice letter until months after denying appellee's claim. The State Board of Insurance had requested appellant to "substantiate" its position several months earlier. Not until the Board demanded a written opinion from appellant's counsel supporting its position did Beacon request the letter. During the making of appellant's bill of exceptions, appellant's counsel asked Loving if he relied on the written opinion in handling appellee's claim. Loving replied:

A  Not necessarily, no, sir.

Q  The lawyer's opinion.

A  I merely was requested by the State Board of Insurance to give them a legal opinion, which I requested from an outside counsel, to ask them what was the legal—what was his legal opinion as to how this made law in the State of Texas, and this is merely what I asked him, **as far as relying on that to deny the claim, no, we did not.** [Emphasis added.]

Point of error ten is overruled.

As to the complaint that the evidence is insufficient to support exempla-

ry damages and that the $50,000.00 awarded was grossly excessive, insurance companies in Texas have a duty of "good faith and fair dealing" in processing and paying claims. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). This duty includes the requirement that the company perform its duties with care, skill, reasonable expedience, and faithfulness. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212 (Tex.1988). Appellee was required to show that appellant did not have a reasonable basis for denying the claim and that the carrier knew or should have known it did not have a reasonable basis for denying the claim.

■ In addition to the evidence already discussed which was relevant to these factors, the evidence at trial showed that the company denied the claim without investigation. The file contained no records of investigation by the adjuster. No attempt was made to determine if the four-wheelers were licensed, used on the street, or used only on the farm property. Appellee testified he was never contacted by the insurance company after he reported the loss to his agent. His telephone calls were not returned. Appellant did not send appellee anything documenting that his claim had been denied until after he requested it.

The jury also had before it most of the correspondence between appellant and the State Board of Insurance and was able to evaluate the tone of those letters. As we have already pointed out, in one of those letters, the Board referenced a recent case from this court, *Western Ins. Cos. v. Andrus*, 694 S.W.2d 657, 660 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.) which held that three-wheelers were not excluded under the homeowner's policy as motor vehicles. Appellant's response to the State Board was that the case did not make appellee's loss covered since the opinion did not come from the Texas Supreme Court. When the Board notified appellant that the supreme court refused to review the *Andrus* case, the appellant responded by stating the supreme court still had not ruled specifically on the question of coverage for

three- and four-wheelers, and that the company's decision remained the same.

The jury, of course, was present at trial to see the demeanor of the witnesses and hear their testimony. We hold there was some, and indeed sufficient, evidence that Beacon National failed to use good faith and fair dealing in handling the claim of appellee.

■ Appellant next argues the $50,000.00 exemplary damage amount is grossly excessive. Although exemplary damages must bear a reasonable relation to the actual damages, no set ratio exists. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex.1985). In fact, a ratio of 2,250 to 1 has been approved. *Donnel v. Lara*, 703 S.W.2d 257 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The ratio in the case before us is less than 28 to 1. Awards must be examined on a case-by-case basis, and before this court may overturn an award of exemplary damages it must find that the award was the result of passion, prejudice, or that the jury disregarded the evidence. *Kraus v. Alamo Nat'l Bank*, 586 S.W.2d 202, 208 (Tex.Civ. App.—Waco 1979), *aff'd*, 616 S.W.2d 908, 910 (Tex.1981). Based on the record before us, we cannot make such a finding. Points of error seven, eight, and nine are overruled.

The judgment is affirmed.