**Emil V. BURES, Jr., Appellant,**

v.

**The FIRST NATIONAL BANK, PORT LAVACA, Texas, Appellee.**

**No. 13–90–307–CV.**

Court of Appeals of Texas, Corpus Christi.

March 28, 1991.

Ronald B. Collins, Duckett, Bouligny, Collins, Clapp, El Campo, for appellant.

Fred Turner, Port Lavaca, for appellee.

Before NYE, C.J., and HINOJOSA and SEERDEN, JJ.

## OPINION

HINOJOSA, Justice.

This is an appeal from a trial court's entry of a directed verdict against appellant's counter-claim for conversion of a manufacturer's certificate of origin to a travel trailer. By four points of error, appellant, Emil V. Bures, complains that the trial court erred in directing the verdict. We agree and reverse and remand.

On June 16, 1986, appellee, First National Bank of Port Lavaca, entered into a floor plan financing arrangement with Mike Moses d/b/a Camper Corral, a dealer in travel trailers. The plan was designed so that the Bank would hold a note and retain as security the manufacturer's certificate of ori-

gin to several travel trailers covered by the financing arrangement. Moses would maintain possession of the travel trailers for display and sale. Upon each sale, Moses agreed to pay the proceeds of the sale to discharge part of the note, or to arrange financing directly between the Bank and the buyer. In return, the Bank agreed to release the manufacturer's certificate of origin if the buyer paid cash, or maintain possession of the title according to the purchaser's new financing arrangements.

On July 3, 1986, Bures purchased a 1986 32′ Sportsman Travel Trailer from Camper Corral. Bures paid $6948.75 and traded in his travel trailer. The new trailer was delivered to Bures at Lake Texana. Moses promised to deliver to Bures the certificate of origin, but failed to do so.

Without the Bank or Bures' knowledge, Moses failed to tender the proceeds of the sale to the Bank pursuant to the floor plan arrangement. The Bank became aware of this in a regularly scheduled inventory of Camper Corral on August 4, 1986. During the inventory it discovered that several trailers covered by the floor plan were missing. On September 9, 1986, Moses informed the Bank that he was having problems paying the note, and disclosed the names and addresses of the parties in possession of the missing trailers.

Upon discovering that Bures possessed the trailer, the Bank contacted Bures through a phone call and a letter dated September 26, 1986. The Bank requested Bures to compare the serial number on the trailer with the number provided, and to inform the Bank if they were the same. The letter also suggested that if they were the same, Bures should consult an attorney. Bures never conducted any business with the Bank before this time, and had no previous contact with it.

On October 23, 1986, the Bank sent a certified letter to Bures indicating that the "break down" on Bures' trailer included $7800.00 in principal, $140.00 in interest, and that interest was accruing at $2.46 per day. (This letter is reproduced in the appendix. In the letter the Bank *demanded:* 1) the balance due from Moses on that part of the note covering Bures' trailer; 2) "serender" [sic] of possession and foreclosure pursuant to the lien; or 3) full payment and a workout between Bures and another financial institution. The letter concluded with a statement that the Bank intended to protect its rights through acceleration, foreclosure, and filing suit against Bures if its demands were not met. This letter was sent certified with a return receipt requested. Bures never picked it up.

On May 22, 1987, the Bank filed suit against Bures seeking foreclosure of its "lien," court costs, attorney's fees and a writ of sequestration. Bures counterclaimed, alleging conversion, and seeking declaratory relief and specific performance.

After admission of all the evidence to the jury, the court found no disputed facts and instructed the verdict against Bures' counter-claim for conversion, holding that Bures was "not entitled to any damages" on his conversion claim. The trial court also directed a verdict against the Bank and ordered it to release the certificate of origin to Bures free from all liens. Bures filed a limited appeal challenging the court's ruling on the conversion claim and its denial of attorney's fees. *See* Tex.R.App.P. 40(a)(4).

By Bures' first, second and third points of error, he complains that the trial court erred in directing a verdict for the Bank on his cause of action for conversion. An instructed verdict is proper only where there are no issues of material fact. *Qantel Bus. Sys. v. Custom Controls Co.,* 761 S.W.2d 302, 303–04 (Tex.1988); *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

Conversion is the unauthorized and wrongful assumption and exercise of dominion and control of another's property inconsistent with his rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446

(Tex.1971); *Lee County Nat. Bank v. Nelson*, 761 S.W.2d 851, 852 (Tex.App.—Beaumont 1988, writ denied); *Virgil T. Walker Const. Co., Inc. v. Flores*, 710 S.W.2d 159, 160 (Tex.App.—Corpus Christi 1986, no writ). Withholding a title from the lawful owner may constitute conversion. *Lee County*, 761 S.W.2d at 852; *Nueces Trust Co. v. White*, 564 S.W.2d 798, 806 (Tex.Civ. App.—Corpus Christi 1978, no writ). However, the mere filing of a security interest, without more, will not constitute conversion. *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1982). In the instant case, we must determine whether there is any probative evidence in the record to support a finding that the Bank committed an unauthorized and wrongful assumption and exercise of dominion and control over the manufacturer's certificate of origin to the exclusion of or inconsistent with Bures' rights.

The evidence showed that the Bank lawfully acquired a security interest in the travel trailer and possession of its manufacturer's certificate of origin through the floor plan financing arrangement. The Bank filed a proper financing statement describing "new ... travel trailers" as collateral in the possession of Chris Moses d/b/a Camper Corral. Bures then acquired possession of the motor home through his purchase. Some evidence showed, and the Bank conceded, that Bures was a buyer in the ordinary course of business. *See* TEX.BUS. & COM.CODE ANN. § 1.201(9) (Vernon 1990). Bures therefore cut off the Bank's perfected security interest. TEX.BUS. & COM.CODE ANN. § 9.307(a) (Vernon 1990). The Bank presents no argument to the contrary.

A cause of action will lie for conversion of a document of title. For example, in *Lee County*, the bank made a loan to the borrower secured by a 1982 Lincoln Continental. The bank retained the title. Other security was sold to satisfy the debt. However, the bank withheld the title to cover a guarantee allegedly made by the borrower. A demand for the title was made, and the bank refused. *Lee County*, 761 S.W.2d at 852. The jury found that the borrower was not liable on the guarantee, and that the bank was liable for conversion of the title. The court in *Lee* upheld the jury's finding of conversion. *Id. See also Nueces Trust*, 564 S.W.2d at 804.

■ In the instant case, the evidence showed that the Bank acquired possession of the manufacturer's certificate of title lawfully through the floor plan. Although the Bank's interest in this document was extinguished upon sale, it continued to possess and control the certificate, *see* TEX. BUS. & COM.CODE ANN. § 9.307(a) (Tex. UCC) (Vernon 1990). The Bank's possession and control of the certificate effectively precluded Bures from using the trailer because he could not get a license plate, and therefore could not tow it on public highways. This is some evidence that the Bank committed an act of conversion. *See Lee County*, 761 S.W.2d at 852; *Nueces Trust Co.*, 564 S.W.2d at 806.

■ The Bank argues that there was no demand made for the title; thus, there was no conversion. *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Hull v. Freedman*, 383 S.W.2d 236, 238 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.); *see* 15 Tex. Jur. 3d Conversion, § 4 (1981). We recognize the rule that a demand and refusal is usually required to establish conversion if possession is acquired lawfully; however, there are exceptions. Demand is not required if it would have been useless, *McVea*, 587 S.W.2d at 531, or if the possessor's acts amount to a clear repudiation of the owner's rights. *Loomis v. Sharp*, 519 S.W.2d 955, 958 (Tex.Civ.App.—Texarkana 1975, writ dism'd); *Neyland v. Brammer*, 73 S.W.2d 884, 887 (Tex.Civ.App.—Galveston 1933, writ dismissed). If other evidence establishes that the Bank converted the certificate, demand and refusal are not necessary. *Presley v. Cooper*, 284 S.W.2d 138, 140–141 (Tex.1955).

■ The evidence showed that on October 23, 1986, the Bank sent a letter to

Bures demanding payment of the outstanding balance, possession of the trailer, or a workout[1]. The Bank's position at all times was that it had a valid lien on the trailer and lawfully possessed the certificate. It filed suit to enforce what it asserted was a valid lien on the travel trailer. Under these circumstances, the jury could have found that a demand on the Bank for the certificate would have been useless. Furthermore, the letter and these actions are evidence from which the jury could find a clear act of repudiation of Bures' rights of ownership in the certificate.

When the trial court rendered the instructed verdict on the conversion claim, it stated that Bures did not establish damages. The measure of damages for a conversion claim includes loss of use. *Southwind Aviation Inc. v. Avendano*, 776 S.W.2d 734, 737 (Tex.App.—Corpus Christi 1989, writ denied). The evidence showed that Bures was unable to use the trailer during the period the certificate was held by the Bank, and the amount it would have cost to rent a comparable trailer as a replacement. This evidence was legally sufficient to establish the measure of damages for conversion of the title. *Id.*

As the foregoing analysis sets forth, there was some evidence to support each element of Bures' claim for conversion, including damages. We therefore hold that the trial court reversibly erred in directing the verdict against Bures on the cause of action for conversion of the manufacturer's certificate of origin. Appellant's first, second, and third points of error are sustained. It is not necessary for us to reach Bures' fourth point of error. Tex.R.App.P. 90(a). This cause is REVERSED and REMANDED for a new trial.

---

1. The letter was returned unopened. Appellee argues that it cannot be considered for that reason; however, the letter is evidence of the bank's position, and quite relevant to determine whether a demand would have been useless.

## APPENDIX A

**FIRST NATIONAL BANK**
IN PORT LAVACA
POST OFFICE DRAWER 7

PORT LAVACA, TEXAS 77979

October 23, 1986

TELEPHONE
512-552-6796

CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mr. and Mrs. Emil V. Bures, Jr.
Rt. 1, Box 209A
Ganado, Texas   77962

RE:   1986 Sportsman 32' travel trailer, Serial Number 032CBD1096326539

Dear Mr. and Mrs. Bures:

I have received no response to my letter of September 10, 1986. On October 10, 1986 Mike and Chris Moses delivered a Xerox copy of the enclosed purchase agreement. Based on this information the trailer which is mortgaged to the First National Bank, which is described in the enclosed purchase agreement, is in your possession.

On June 16, 1986, Chris Moses dba Camper Corral executed a note in the sum of $18,900.00 to the First National Bank (copy enclosed); to secure said agreement this bank obtained a security agreement and Manufactures Certificate of Origen (copies enclosed).

The break down on the above Sportsman trailer is as follows:

|  |  |
|---|---|
| Loan consideration of trailer | $7,800.00 |
| Payments and Credits | NONE |
| Principal balance due as of October 23, 1986 | $7,800.00 |
| Interest due as of October 23, 1986 | $ 140.08 |
| Per Diem per day subsequent to October 23, 1986 | $ 2.46 |

Under our collateral mortgage we hold a first lein on this property and are demanding one of the following:

(1)   Pay the balance of $7,940.08, plus interest as it accrues.
(2)   Serender possession and we will proceed with foreclosure and sale according to the lein which we hold (copy enclosed).
(3)   Or, if you wish you may contact your financial institution to work out a method of payment for this balance on a monthly basis.

DEFENDANT'S EXHIBIT

**941**

It is the intent of the bank under number one and three to assist you in retaining this trailer, however, we must be protected under our first lein and cannot forgo taking action if you are not agreeable to one of the three above. This will inable our filing a law suit for the return of our collateral.

· This is to·be considered to you as official notice of the bank's intent to proceed in foreclosure under the note and collateral agreement. Notice of intent to ACCELERATE the balance of the note has been done, which is now past due (copy enclosed).

Sincerely,

Edwin A. Wagner
Senior Vice President

EAW/tjl

Encls.

cc/Mr. and Mrs. Michael Moses
1007 Uhland Rd. East #5
San Marcos, Texas 78666