**Ronald KOKES, Appellant,**

v.

**Angelina COLLEGE, Appellee.**

**No. 09–03–520 CV.**

Court of Appeals of Texas, Beaumont.

Submitted April 20, 2004.

Delivered Sept. 9, 2004.

Opinion Overruling Rehearing Nov. 18, 2004.

Gordon R. Cooper, II, Johnetta S. Cooper, Cooper & Cooper, Houston, for appellant.

Wade Crosnoe, Sherry L. Travers, John Sepehri, Thompson, Coe, Cousins & Irons, LLP, Dallas, Wayne D. Haglund, Law Office of Wayne D. Haglund, PC, Lufkin, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

Ronald Kokes, a sixty-five-year-old white male, complains Angelina College discriminated against him on the basis of age, race, and sex by selecting Benetha Jackson, a thirty-five-year-old black female, as psychology instructor despite his claimed superior qualifications. After filing a complaint with the Equal Employment Opportunity Commission and being granted the right to sue, Kokes sued the College in state district court. He alleged Angelina's conduct violated state and federal law.[1] Angelina removed the cause to federal court. The federal court granted summary judgment in favor of Angelina on the federal law claim, but remanded the state law claim to state court for determination.

Angelina filed a motion for summary judgment. *See* TEX.R. CIV. P. 166a(c). Angelina said it had articulated legitimate, nondiscriminatory reasons for the selection of Jackson, so the burden had shifted to Kokes to prove Angelina's stated reasons were merely a pretext for discrimination. The motion asserted Kokes was unable to meet his burden. Angelina objected to any consideration of the testimony of Dr. Larry Dickens, the Director of the Division of Liberal Arts, because, Angelina said, he was mentally incapacitated.

---

1. Angelina's brief mentions a common law fraud claim by Kokes. We need not address the claim because Kokes' brief does not raise the issue on appeal. *See Sunnyside Feedyard,* *L.C. v. Metropolitan Life Ins. Co.,* 106 S.W.3d 169, 173 (Tex.App.-Amarillo 2003, no pet.). TEX.R.APP. P. 38.1(h).

Angelina relied on a guardianship order and medical reports of his incapacity. Kokes relied on Dickens' deposition testimony as evidence of Angelina's discriminatory intent.

The trial court entered an order striking the deposition of Dickens and granting summary judgment in favor of Angelina. The trial court also struck Kokes' motion for reconsideration. Kokes appeals. We hold the trial court erred in striking Dickens' testimony. Because his testimony raised a material fact issue precluding summary judgment on the basis asserted in the motion, we reverse and remand the case to the district court for further proceedings.

### STANDARD OF REVIEW

Summary judgments are reviewed *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). The purpose of the summary judgment procedure is to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex.1979)(citing *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)). Summary judgment is proper when the movant establishes there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Evidence favorable to the nonmovant is to be taken as true in deciding whether a fact issue exists; reasonable inferences are indulged and any doubts are resolved in favor of the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002).

The summary judgment must stand or fall on the grounds presented in the motion for summary judgment. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997). "A court cannot grant summary judgment on grounds that were not presented." *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex.2002).

### WITNESS COMPETENCY

■ The first question we consider is whether Angelina proved Dr. Larry Dickens was incompetent to be a witness. Dickens was Director of the Division of Liberal Arts at Angelina College when the psychology position became available upon the retirement of the previous instructor. Dickens was the direct supervisor of the psychology instructor. He appointed the members of the screening committee, and his recommendation was considered in the hiring decision.

The job notice Angelina posted stated the required qualifications included a master's degree in psychology or a master's degree with 18 graduate hours in psychology, preference would be given to applicants with experience in community college teaching, and applicants "[m]ust possess the ability to interact with a diverse student population." The notice stated "Women and Minority Applicants are encouraged to apply. ANGELINA COLLEGE IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER." On May 3, 2000, Dickens sent a memorandum to Dr. Larry Phillips, President of Angelina, and Dr. Patricia McKenzie, Dean of the College, in which he recommended Jackson for the position. In the concluding paragraphs of the memo, Dickens stated:

My final point involves the Angelina College goal of personnel leadership. We commit ourselves to the development of a competent, dedicated faculty and staff who reflect the diversity of background, needs, and expectations of our communi-

ty. Benetha fulfills that philosophy in terms of access and equity: she would be an excellent role model for many of our students.

I cannot overemphasize my complete confidence in Benetha Jackson as our next full-time psychology instructor.

I would hope and trust that you would agree.

When Dickens was questioned at his deposition about the memorandum, he testified:

A: I felt like it was important to give Benetha Jackson an opportunity to become an instructor at Angelina College.... I felt like she was representative of the community and we—we have a lot of students at college who are black and I felt like Benetha Jackson was representative of that community.

Q: So you thought that she would be a better choice because she was black and she could relate to those black students?

A: I thought she could. That's why I wrote the letter.

Q: Okay. So the fact that she was black motivated your decision?

A: That is correct.

Q: Okay. And the fact that Dr. Kokes was white made you think in your mind he wouldn't be best for the job; is that right?

A: That is correct.

Q: Okay. Benetha Jackson was much younger than him also, wasn't she?

A: She was.

Q: That was better too, wasn't it?

A: She probably had a lot on the ball.

Q: And so your thinking was that because Dr. Kokes was over 65, or 65 or so, that she probably could be better at doing the job than him because she was younger?

A: That is correct.

On June 6, 2002, approximately one month after Dickens was deposed, another court entered an order appointing a guardian of the person and estate of Dickens based on a finding he was unable to care for his health or manage his financial affairs. The order provided Dickens retained the capacity to vote and to make testamentary dispositions if the officer administering the oath determined Dickens understood the nature and extent of his possessions and the effect of the disposition.

A report by Dr. Ranjit Chacko was filed in the guardianship proceeding. The report stated he had examined Dickens on June 27, 2001, and had diagnosed him with "[d]ementia, fronto-temporal type, moderate severity affecting cognitive function and behavior." Dr. Chacko's report stated that, for two years prior to the examination, Dickens "was noted to have changes in behavior with inappropriate and impulsive actions, personality change, cognitive changes and mood instability with poor insight and judgment." The report also noted none of Dickens' current medications affected his demeanor or ability to participate fully in a court proceeding, and he was not diagnosed as senile. However, Dr. Chacko reported Dickens was totally without capacity. Dr. Chacko also completed a second, undated report, which indicated he had examined Dickens on February 1, 2002, and determined he suffered from "[d]ementia—moderate to severe; probably Alzheimer's type." In the second report, Dr. Chacko again found Dickens to be totally without capacity.

With certain exceptions, Texas Rule of Evidence 601(a) creates a general presumption of witness competency. The Rule states:

(a) General Rule. Every person is competent to be a witness except as otherwise provided in these rules. The fol-

lowing witnesses shall be incompetent to testify in any proceeding subject to these rules:

(1) *Insane persons.* Insane persons who, in the opinion of the court, are in an insane condition of mind at the time when they are offered as a witness, or who, in the opinion of the court, were in that condition when the events happened of which they are called to testify.

(2) *Children.* Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated. *See* TEX.R. EVID. 601(a). Witness competency is a preliminary question for the trial court to determine, and the trial court's ruling will not be disturbed on appeal unless an abuse of discretion is shown. TEX.R. EVID. 104(a). *See, e.g., Solis v. State,* 647 S.W.2d 95, 98 (Tex.App.-San Antonio 1983, no writ). The record here includes no separate hearing on Dickens' competency, however. This was a summary judgment proceeding. The trial judge did not have occasion to observe Dickens. The only information the trial court had on Dickens' competency concerned Chacko's reports, the guardianship order, and the excerpts from Dickens' deposition testimony.

■■■ An adjudication of incapacity in a guardianship proceeding fixes the individual's status as an incapacitated person at that time. *Quada v. Quada,* 396 S.W.2d 232, 233 (Tex.Civ.App.-Texarkana 1965, no writ). However, the existence of a guardianship does not automatically render a witness incompetent to give testimony. In one case, this Court held a guardianship order created a rebuttable presumption that a witness was incompetent to testify, but that approach does not recognize the distinction between competency to testify and incapacity. *See Mobil Oil Corp. v. Floyd,* 810 S.W.2d 321, 324 (Tex.App.-Beaumont 1991, orig. proceeding). The Probate Code defines "incapacitated person" in part as follows:

> an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs....

TEX. PROB.CODE ANN. § 601(14) (Vernon 2003). *See also* TEX. PROB.CODE ANN. § 3(p) (Vernon 2003). This definition of "incapacitated" does not equate with insanity or incompetency under Rule of Evidence 601. Guardianship proceedings are intended to protect persons who are incapable of caring for themselves or their property. *See* TEX. PROB.CODE ANN. § 602 (Vernon 2003). The Texas Rules of Evidence are intended to promote the ascertainment of truth and just determinations in legal proceedings. *See* TEX.R. EVID. 102. The issue of competency under Rule 601 is whether a witness has the ability to perceive the relevant events, recollect the events, and narrate adequately that recollection. *See Rodriguez v. State,* 772 S.W.2d 167, 170 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (applying former Texas Rule of Criminal Evidence 601).[2] Specifically, one who lacks capacity to manage personal financial or health matters, but retains capacity to vote and to make testamentary dispositions, may be competent to testify. The determination of incapacity under the Probate Code does not presumptively or necessarily determine witness competency under Rule 601.

---

**2.** "The capacity to narrate involves the ability to understand questions posed and to frame intelligent answers, and to understand the moral responsibility to tell the truth." *Id.*

Furthermore, a mental infirmity does not necessarily render a witness incompetent to testify. In *Rodriguez,* the court considered whether a witness with Alzheimer's disease should have been permitted to testify. *Rodriguez,* 772 S.W.2d at 170. The court acknowledged some of the witness's testimony raised "troubling questions," but concluded her account of the assault and robbery was "lucid and purposeful." *Id.* The court quoted the following from the Court of Criminal Appeals decision in *Watson v. State,* 596 S.W.2d 867, 870–71 (Tex.Crim.App.1980):

> If a person afflicted with a physical or mental disability possesses sufficient intelligence to receive correct impressions of events he sees, retains clear recollection of them and is able to communicate them through some means, there is no reason for rejecting his testimony.

*Rodriguez,* 772 S.W.2d at 170. The *Rodriguez* court concluded it was for the trier of fact to determine the credibility of the witnesses and the weight to be given each witness's testimony. *See Rodriguez v. State,* 772 S.W.2d at 173.

A party attacking a witness's competency has the burden of proving the incompetency. *Handel v. Long Trusts,* 757 S.W.2d 848, 854 (Tex.App.-Texarkana 1988, no writ). In the deposition excerpts which are part of the record, there is no indication Dickens did not understand the questions he was being asked. He framed responsive answers, and he clearly related his recollection of the events. Dickens' testimony and the manner in which it was offered do not cast doubt upon his understanding of the oath, or his ability to perceive, recollect, and recount the events at issue here. Because this was a summary judgment proceeding, the trial court did not observe Dickens.

If a witness meets the requirements of competency, though the issue may be close, the factfinder should be allowed to hear the testimony and make the determination of how much weight is to be given to the testimony in light of a mental infirmity. Witness competency questions are resolved case by case. Of course, a mental infirmity may reach the point at which the person is incompetent as a witness, and his testimony would then be of no help to the trier of fact. However, the information in this limited summary judgment record is not sufficient to prove Dickens' incompetency to testify to the events at issue and does not justify refusing to consider his testimony. We hold on this record the trial court abused its discretion in striking Dickens' deposition testimony.

### Summary Judgment

The Texas Commission on Human Rights Act (TCHRA) provides in part "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer ... refuses to hire an individual...." *See* Tex. Lab.Code Ann. § 21.051 (Vernon 1996). The Code also provides:

> (a) Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice, unless race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force.
>
> (b) In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of

the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay. *See* TEX. LAB.CODE ANN. § 21.125 (Vernon Supp.2004).[3] Because the TCHRA is intended to execute the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, analogous federal statutes and cases guide state courts in interpreting the TCHRA. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001).

Angelina argued it was entitled to summary judgment because it articulated legitimate, nondiscriminatory reasons for Kokes' nonselection, and Kokes could not demonstrate those reasons were a pretext for discrimination. Angelina based its summary judgment motion solely on this assertion of a lack of a material fact issue on pretext. Angelina did not base its motion for summary judgment on issue preclusion,[4] the diversity clause, or the affirmative defense. *See* TEX. LAB.CODE ANN. § 21.125(a), (b) (Vernon Supp.2004). Angelina does not rely on those issues on appeal. Although Angelina says Kokes' claim is difficult to prove, because the decision maker was of the same race, gender, and approximate age, Angelina does not argue Kokes' race, gender, or age bars his

suit; the statute's language applies to all. Angelina does not rely on section 21.121, which provides: "An employer does not commit an unlawful employment practice by developing and implementing personnel policies that incorporate work force diversity programs." *See* TEX. LAB.CODE ANN. § 21.121 (Vernon 1996).[5] The sole issue presented is whether there is any evidence Angelina's reasons were a pretext for discrimination based on race, sex, or age.

 Because this is an appeal from a summary judgment, both parties analyze the case under the procedural framework of *McDonnell Douglas* and its progeny. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court."). Once the plaintiff makes a prima facie case, which Angelina concedes here, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the disparate treatment. If the employer meets its burden of production, the only relevant question is whether the plaintiff presented evidence the employer made its decision based on race, gender or age, despite the employer's proffered explanation. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *St. Mary's Honor Ctr.*

---

3. "The difference between the two statutes is that section 21.051 states circumstances in which an employer has committed an unlawful employment practice, whereas section 21.125(a) explicitly describes what a complainant must show in order to prevail in a lawsuit." *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001).

4. We note that lack of evidence of pretext was the basis for the federal court's summary judgment. The federal court did not refer to Dickens' testimony and it is not apparent the testimony was presented to the federal court.

5. *See generally Grutter v. Bollinger,* 539 U.S. 306, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003); *Gratz v. Bollinger,* 539 U.S. 244, 268–69, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003).

*v. Hicks,* 509 U.S. 502, 507–8, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[6]

Angelina articulated nondiscriminatory reasons for Kokes' nonselection: (1) Jackson had more community college teaching experience, (2) her overall teaching experience was more frequent and recent, and (3) Jackson's references described her as an outstanding teacher, whereas Kokes' references spoke more of his administrative, research, and general skills. Angelina denies Kokes had superior qualifications and denies the screening committee ranked the finalists, although Kokes' "score" may have been the highest.

Kokes argued the following factors established discriminatory intent: (1) his claimed superior qualifications, (2) the failure of the Dean of Instruction and Admissions to interview him, and (3) the screening committee "scores" and listing of finalists suggested he was the top candidate, yet Jackson was selected. We note the record contains one rating form which states Jackson "would appeal to our minority population." Kokes relied on Dickens' testimony that race and age were motivating factors for Dickens' recommendation of Jackson.

Angelina argues Dickens' testimony and his recommendation are merely "stray remarks." Angelina says in its brief on appeal: "In any event, Dickens' testimony is an example of a stray remark by one person involved in a complicated and multi-faceted process with many evaluating officials that was ultimately decided by someone else." Dr. Larry Phillips, Angelina's president, was the ultimate decision maker, and Dickens' memorandum, explained in his deposition, was addressed to Phillips. Expressions may be direct evidence of motivation, and not mere "stray remarks," when they are (1) made by the decision maker or one whose recommendation is sought by the decision maker, (2) related to the specific employment decision challenged, and (3) made close in time to the decision. *See generally Lo v. Federal Deposit Ins. Corp.,* 846 F.Supp. 557, 564 (S.D.Texas 1994), *aff'd,* 52 F.3d 1066 (5th Cir.1995). Phillips testified that Dickens' role was to make a recommendation about the candidates selected as finalists by the screening committee. Therefore, Dickens' recommendation was one factor considered by the decision maker. The four finalists included Kokes and Jackson, and the screening committee said each of the finalists could do the job. Dickens' deposition testimony provides direct evidence race and age were motivating factors for his

**6.** Recently, the United States Supreme Court held direct evidence of discrimination is not required in order to obtain a mixed-motive jury instruction; circumstantial evidence is sufficient. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 93, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The United States Court of Appeals for the Fifth Circuit has noted that courts which have addressed the implications of *Desert Palace v. Costa* on the traditional structure for analyzing discrimination claims have reached varied results, with some courts seeing no tension and others concluding *Desert Palace v. Costa* overruled or greatly limited *McDonnell Douglas. See Roberson v. Alltel Info. Servs.,* 373 F.3d 647 (5th Cir.2004). In *Roberson,* the court said it "need not decide the fate of *McDonnell Douglas* because Rober-

son's claims fail under any interpretation of *Desert Palace." Roberson,* 373 F.3d at 652. The *Roberson* court held that, to withstand summary judgment in a Title VII case, a plaintiff must present sufficient direct or circumstantial evidence for a reasonable jury to conclude race, color, religion, sex, or national origin was a motivating factor for any employment practice. *Id.See also* Christopher R. Hedican, Jason M. Hedican, & Mark P.A. Hudson, *McDonnell Douglas: Alive and Well,* 52 Drake L.Rev. 383, 401 (Spring 2004)("*Raytheon Co. v. Hernandez* [540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003)], the Supreme Court's most recent employment decision after *Costa,* directly confirmed that *McDonnell Douglas* is alive.").

recommendation. His testimony provides some evidence race and age were motivating factors in Angelina's decision-making, though the final decision was made by Phillips, and Dickens' recommendation was only one factor in that decision. *See generally Quantum Chem. Corp.*, 47 S.W.3d at 480 ("a motivating factor" is the standard of causation "regardless of how many factors influenced the employment decision"); Tex. Lab.Code Ann. § 21.125 (Vernon Supp.2004).

■ A plaintiff in a discrimination case may proceed "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In this state law claim, Section 21.125(a) of the Texas Labor Code requires Kokes to prove race, age, or sex was a motivating factor in the employment decision. *See generally Quantum Chem. Corp.*, 47 S.W.3d at 479–80. The statute does not require proof through only one form of evidence, circumstantial or direct, and the statute contemplates a mixture of legitimate and illegitimate motives. *See* Tex. Lab.Code Ann. § 21.125 (Vernon Supp. 2004). When Angelina articulated legitimate, nondiscriminatory reasons for its decision, Kokes was required to show either 1) the reasons were not true but, rather, were a pretext for discrimination, or 2) even if the reasons were true, another motivating factor was race, sex or age. If race, age, or sex was truly a motivating factor, then either Angelina's stated reasons were false or its stated reasons were not the only motivating factors.[7]

In reviewing the summary judgment, an appellate court is required to assume the evidence favorable to the nonmovant is true, and resolve all doubts and indulge all reasonable inferences in favor of the nonmovant. *See Limestone Products*, 71 S.W.3d at 311. Here, we assume it is true that race and age were motivating factors for the recommendation made by Dickens, and we indulge reasonable inferences from that testimony in favor of the nonmovant. Dickens' testimony raises a material fact issue as to whether Angelina's articulated reasons were not the only motivating factors for its decision, and whether race and age were also motivating factors. On this limited record, Angelina has not shown entitlement to judgment as a matter of law.

Appellant's issues two, three, and four are sustained. We need not address his other issues. The trial court's order granting summary judgment in favor of Angelina is reversed, and this cause is remanded to the trial court for further proceedings.

REVERSED AND REMANDED.

### OPINION ON MOTION FOR REHEARING

PER CURIAM.

On motion for rehearing, Angelina states Dickens died on August 11, 2003, more

---

7. We do not consider whether age and race were used "to attain diversity in the employer's work force," because that was not the basis for the summary judgment and has not been argued by the parties. *See generally Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d at 204 ("A court cannot grant summary judgment on grounds that were not presented."). *See* Tex. Lab.Code Ann. §§ 21.125 (Vernon Supp.2004); and 21.121 (Vernon 1996). We also do not decide whether the federal court's ruling precludes pursuit of the state law claim, because that issue was not argued as a basis for the summary judgment and is not briefed by the parties.

than a year after he gave his deposition testimony. Angelina says the cases cited by this Court on witness competency "almost all involved situations where the trial court had an opportunity to observe the witness." Angelina argues "[b]ecause Dickens is dead, the trial court will not have the opportunity to observe him with an eye toward his ability to perceive, recall, and relate events."

The record includes clear deposition testimony from Dickens and a judicial finding by the probate court that Dickens retained capacity to make testamentary dispositions and to vote, despite that court's review of the medical records. The trial court must determine whether, at the time the events occurred, the witness was capable of intelligently perceiving the events, and whether at the time the witness was called to testify—here, at the time Dickens gave his deposition testimony—the witness possessed the ability to recall the events and narrate adequately that recollection. The issue of witness competency was not presented to the trial court at the time Dickens testified by deposition—although the partial deposition transcript indicates Angelina had the medical report at that time—and the trial court therefore did not have the opportunity to observe him. On remand the trial court may consider additional evidence to clarify the records and the issue of Dickens' competency as a witness at the relevant times.

Angelina says the best evidence of Dickens' competency at his deposition would be "the medical findings, judicial findings, and the deposition testimony in the record."[1] The records will be helpful to the trial court. However, additional information, such as clarification from the reporting expert who examined and treated Dickens, Dickens' colleagues' observations,[2] or other reliable information presumably will be available to clarify the issue of Dickens' competency as a witness.

Angelina argues the trial court correctly granted summary judgment even if Dickens' testimony is considered. In its motion for rehearing, Angelina says this Court "concluded that the 'sole issue' arising out of the [*McDonnell Douglas*] procedural framework here is whether there is any evidence Angelina's legitimate articulated reasons for its employment decision 'were a pretext for discrimination based on race, sex, or age.'" Angelina takes a partial quote out of context. The partial quotation of our opinion is from a paragraph referring to Angelina's motion for summary judgment. The "sole issue" presented in the motion for summary judgment was whether there is evidence Angelina's stated reasons were pretextual. However, we stated the sole issue as the Supreme Court did in *Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357, (2003). If the employer meets its burden of production, the only relevant question is whether the plaintiff presented sufficient evidence the employer made its decision based on race, gender, or age despite the employer's proffered explanation. *Id.*, 540 U.S. at 53.

Angelina also argues this Court misapplied the law of stray remarks by holding Dickens' testimony raised a fact issue precluding summary judgment. We conclude the testimony was direct evidence, not mere stray remarks.

The motion for rehearing is overruled.

---

1. The record contains only brief excerpts from Dickens' deposition. Dickens' complete deposition may provide additional evidence for the trial court to review on remand.

2. Dickens remained the Director of Angelina's Liberal Arts Division until December of 2000.