NUMBER 13-05-086-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

QUALITY DIALYSIS, INC.,                                         Appellant,

 

                                           v.

 

HERBERT
ADAMS,                                                    Appellee.

 

 

 

                  On appeal from the 240th
District Court

                          of Fort
Bend County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








Appellant, Quality
Dialysis, Inc. ("QD"), brings this appeal from a jury verdict finding
that age was a motivating factor in the constructive discharge of appellee,
Herbert Adams ("Adams").  Damages
were awarded based upon back pay, health benefits, and the jury's finding of
malice.  We affirm. 

I.  Background

QD began in
approximately 1996 as a company providing in-home kidney dialysis care.  Adams was hired by QD in September 1996 at
the age of 63.  He began as temporary
help and then was quickly hired by QD's owner, Cynthia Barclay, on a part-time
basis.  Shortly thereafter, he was hired
on a full-time basis, with full-time benefits including health care.  Although initially hired as a transport
driver, Adams later became Distribution Manager.  He was consistently given excellent reviews,
receiving the highest possible scores in his 1998, 1999, and 2000 reviews.  Adams received several raises, and was making
$14.42 an hour by September 2000. 
Testimony of QD's marketing representative, Barbara Williams, reflected
that Adams's work performance was "excellent."  "Everybody raved about him; patients,
doctors, anyone who came into contact with him."  Evidence was undisputed that Adams was
capable of performing all his job functions and that he did so in an exemplary
manner. 








Sometime between
September 2000 and October 2001, Barclay's daughter, Genevieve (also known as
Starr Estelle), was promoted to the position of office manager.  She was then in her early 30's.  In 2001, the company changed its health care
provider.  At a meeting in May 2001, the
insurance representative commented that Adams might not be able to be insured
because he was too old.  Adams testified
that others at the meeting laughed at the comment.  It is undisputed that Adams and his wife were
subsequently accepted on the new insurance plan. 

In August 2001, Adams
was involved in a hit-and-run accident for which he was not at fault.  Williams testified that after this accident,
in the fall of 2001, she was in Genevieve's office along with Barclay when
Genevieve stated that Adams was getting too old and "we needed to push him
out of there."  Adams testified that
"after the accident, things started going downhill for me."

In October 2001,
Marian Wilson, Adams's immediate supervisor, was instructed by Genevieve to
inform Adams that his hours were being reduced from forty to thirty hours per
week, and his pay was being reduced from $14.42 to $14.00 per hour.  Any questions were to be directed to Genevieve.  Wilson told Adams in early November of the
reductions; the reason given to Adams was a declining patient census.  However, at trial Genevieve could neither
identify the exact number of patients at that time nor the extent of any
decline in census.[1]  Because Adams's hours were reduced, his
health coverage was also terminated.  He
discovered this when he presented his card at a pharmacy to purchase medication
for his wife.  Later, he noticed QD was
no longer making deductions for his share of the insurance.  








At the time of Adams's
reductions, QD had two full-time and one-part-time employee drivers; Adams was
the only employee, however, for whom hours and pay were reduced.  None of the later-hired younger drivers, whom
Adams supervised, received any such reductions. 
Adams requested that his hours be increased back to thirty-two hours per
week so that he could maintain health insurance, but that request was
denied.  Adams determined that he could
not pay his bills on the resulting salary and gave two weeks' notice.  He did not look for new employment while he
remained an employee with QD.  After a
disagreement over his entitlement to some vacation time, Adams ceased his
employment with QD.  He found new
employment approximately two weeks later, at a lesser hourly salary but with
full-time hours and attendant benefits. 
Adams claims he had no choice but to quit, having been "forced
out."  Adams's last day was December
4, 2001.

Later in December
2001, QD hired a replacement driver at full-time status for forty hours per week.  The new hire was in his early thirties.  The new hire, Williams Bassett, did not work
out and approximately six weeks later, Barclay called Adams to ask if he would
like to come back to work; she needed help because QD had secured a new
contract with the Harris County Hospital District.  There was no evidence as to the hours, wages,
or other terms that would have been offered. 
Adams declined.  At trial, Adams
testified that he had been QD's longest-term employee in a company with high
turnover, and he felt he had helped to build the company and had always done
his job well.  He felt "used"
and "forced out," and had no desire to return to where he had been
treated "so hostile."  He did
not feel he would be welcomed back.








Adams filed an age
discrimination claim with the Equal Employment Opportunity Commission
("EEOC") and with the Texas Commission on Human Rights
("TCHR").  The EEOC issued a
right to sue letter which reflected that it had found "reasonable cause to
believe that violations of the statute(s) occurred with respect to some or all
of the matters alleged in the charge." 
The TCHR also issued a right to sue letter, and Adams subsequently
brought suit alleging violations of the Texas statute.  Both these letters were included in evidence
to the jury.  

The jury returned a
verdict finding that age was a motivating factor in QD's decision to discharge
Adams.  It awarded Adams $30,339 as
damages for back pay and employment benefits. 
The jury also found that QD had acted with malice (by clear and
convincing evidence) and awarded Adams $30,339 in exemplary damages. 

II.  Issues on Appeal








QD brings four issues
on appeal:  (1) there is no evidence to
support the jury's finding that QD discharged Adams due to his age; (2) in the
alternative, the finding is against the great weight and preponderance of the
evidence; (3) the finding of malice is against the great weight and
preponderance of the evidence; and (4) the award of exemplary damages is
excessive.  As sub-issues under the first
two issues, QD argues that the trial court erred in (a) overruling its motion
for directed verdict, and (b) overruling its motion for "judgment
J.N.O.V."  As sub-issues relating to
the finding of malice, QD argues that the trial court erred in (a) admitting
certain opinion testimony of Adams, (b) admitting hearsay evidence of
statements allegedly made by an independent insurance agent, and (c) overruling
QD's objection to including the malice and exemplary damages questions in the
jury charge.  

III.  Standard of Review

1.  Legal and Factual Sufficiency

We address
legal-sufficiency challenges as either "no-evidence" or
"matter-of-law" issues.  Gooch v. Am. Sling Co., 902 S.W.2d 181,
183-84 (Tex. App.BFort Worth 1995, no
writ).  We analyze the issue as a
"no-evidence" challenge when, as here, the party complaining on
appeal did not bear the burden of proof at trial.  Id. 

When reviewing facts, the 

. . . final test for legal sufficiency must always
be whether the evidence at trial would enable reasonable and fair‑minded
people to reach the verdict under review. 
Whether a reviewing court begins by considering all the evidence or only
the evidence supporting the verdict, legal‑sufficiency review in the proper
light must credit favorable evidence if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not. 

 








City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We will review the evidence "in the
light most favorable to the verdict, disregarding all contrary evidence that a
reasonable jury could have disbelieved." 
Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex.
2005) (per curiam).  If the evidence
presented at trial would permit reasonable and fair-minded people to differ in
their conclusions, then jurors must be allowed to do so.  Keller, 168 S.W.3d at 822.  The trier-of-fact, whether the trial court or
the jury, remains the sole judge of the credibility of the witnesses and the
weight to give their testimony.  Id.
at 819.  It may choose to believe one
witness and disbelieve another, and a reviewing court cannot impose its own
opinions to the contrary.  Id. at
822.  "A reviewing court cannot
substitute its judgment for that of the trier-of-fact, so long as the evidence
falls within this zone of reasonable disagreement."  Id. 
"The court must consider evidence in the light most favorable to
the verdict, and indulge every reasonable inference that would support it.  But if the evidence allows of only one
inference, neither jurors nor the reviewing court may disregard it."  Id. 


When reviewing factual
insufficiency complaints, this Court considers, weighs, and examines all
evidence which supports or undermines the finding.  Golden Eagle Archery v. Jackson, 116
S.W.3d 757, 761 (Tex. 2003).  The finding is set aside only if the evidence
standing alone is too weak to support the finding or the finding is so against
the overwhelming weight of the evidence as to be manifestly unjust and clearly
wrong.  Id.  

IV.  Analysis

A. 
Sufficiency of Evidence to Support Jury's Finding 

that Discharge was Motivated by Age

 

Jury question number one
inquired whether age was a motivating factor in QD's decision to discharge
Herbert Adams, as defined.  The question included
the following instructions:

An employee is
considered to have been discharged when an employer makes conditions so
intolerable that a reasonable person in the employee's position would have felt
compelled to resign; 

 

A "motivating
factor" in an employment decision is a reason for making the decision at
the time it was made.  There may be more
than one motivating factor for an employment decision.








QD argues that the evidence is neither legally nor
factually sufficient to support the jury's finding that Adams's discharge was
motivated by age. 

Adams's claim of age
discrimination was brought under section 21.051 of the Texas Commission on
Human Rights Act ("TCHRA").  Tex. Lab. Code Ann. ' 21.051 (Vernon 1996).  The legislature drafted the TCHRA to
"correlate state law with federal law in the area of discrimination in
employment."  M.D. Anderson Hosp.
& Tumor Inst. v. Willrich, 28 S.W.3d 22, 24 (Tex. 2000); Schroeder
v. Texas Iron Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991).  In adhering to the legislative intent, Texas
courts look to the pertinent federal law in interpreting the relevant
provisions of the TCHRA.  M.D.
Anderson, 28 S.W.3d at 24; Gold v. Exxon Corp., 960 S.W.2d 378, 380
(Tex. App.BHouston [14th Dist.] 1998, no pet.) (citing DeMoranville
v. Specialty Retailers, Inc., 933 S.W.2d 490, 492 (Tex. 1996); Trico
Tech. Corp. v. Rodriguez, 907 S.W.2d 650, 652‑53 (Tex. App.BCorpus Christi 1995, no writ); Farrington v.
Sysco Food Servs., Inc., 865 S.W.2d 247, 251 (Tex. App.BHouston [1st Dist.] 1993, writ denied)). 








Under the TCHRA, an unlawful
employment practice is shown if the plaintiff establishes that age was a
motivating factor, even if other factors also motivated the practice.  Quantum Chem. Corp. v. Toennies, 47
S.W.3d 473, 481 (Tex. 2001).  In order to
establish a prima facie case of age discrimination under the TCHRA, a plaintiff
must prove that he (1) is a member of a protected class, (2) was discharged,
(3) was qualified for the position from which he was discharged, and (4) was
either replaced by someone outside the protected class, replaced by someone
younger, or was otherwise discharged because of his age.  Machinchick v. PB Power, Inc., 398
F.3d 345, 356 (5th Cir. 2005) (citing Russo v. Smith Int'l, Inc., 93
S.W.3d 428, 435 (Tex. App.BHouston [14th Dist.] 2002, pet. denied)).  A plaintiff may rely on circumstantial or
direct evidence to make the requisite proof. 
Kokes v. Angelina College, 148 S.W.3d 384, 392 (Tex. App.BBeaumont 2004, no pet.). 

In a discrimination suit,
constructive discharge may satisfy the discharge element of the claim.  Passons v. Univ. of Tex., 969 S.W.2d
560, 562 (Tex. App.BAustin 1998, no pet.).  Constructive discharge occurs when an
employer makes conditions so intolerable that the employee reasonably feels
compelled to resign.  Id.  To argue constructive discharge, it follows
that the employee must actually resign his employment.  See Winters v. Chubb & Son, Inc.,
132 S.W.3d 568, 575 (Tex. App.BHouston [14th Dist.] 2004, no pet.). 








A burden-shifting analysis
applies in discrimination cases.  M.D.
Anderson, 28 S.W.3d at 24 (citing Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133, 142 (2000)).  Once the
plaintiff establishes a prima facie case, the "burden of production shifts
to the employer to articulate a legitimate, nondiscriminatory reason for the
disparate treatment."  Winters, 132
S.W.3d at 575 (citing Kokes, 148 S.W3d at 391).  Where the employer claims that the
termination was part of a reduction in force, the employee makes out a prima
facie case of age discrimination by tendering evidence, circumstantial or
direct, from which a fact finder might reasonably conclude the employer
intended to discriminate in reaching its decision.  Gold, 960 S.W.2d at 381.  If the employer comes forward with
nondiscriminatory reasons for the employment decision, the plaintiff is then
"required to show either 1) the reasons were not true but, rather, were a
pretext for discrimination, or 2) even if the reasons were true, another
motivating factor was . . . age."  Kokes,
138 S.W.3d at 393.[2]  Expressions may be "direct
evidence" of motivation "when they are (1) made by the decision maker
or one whose recommendation is sought by the decision maker, (2) related to the
specific employment decision challenged, and (3) made close in time to the
decision."  Id. at 392
(citing Lo v. Fed. Deposit Ins. Corp., 846 F. Supp. 557, 564 (S.D. Tex.
1994)). 

A no‑evidence point
will be sustained only if there is no more than a scintilla of evidence to
prove the existence of a fact.  Quantum
Chem., 47 S.W.3d at 481; General Motors Corp. v. Sanchez, 997 S.W.2d
584, 588 (Tex. 1999).  We conclude Adams
presented some evidence that QD's stated reasons for the dismissal were a
pretext for age discrimination.  








We similarly conclude that
the jury finding was not against the great weight and preponderance of the
evidence.  When reviewing for factual
sufficiency, a finding is set aside only if the evidence standing alone is too
weak to support the finding or the finding is so against the overwhelming
weight of the evidence as to be manifestly unjust and clearly wrong.  Golden Eagle Archery, 116 S.W.3d at
761.  At trial, Adams presented
four witnesses, including himself.  The
only controverted testimony related to motivation and Genevieve's comment that
Adams was getting too old and "we needed to push him out of there." 

We remain mindful that the
trier-of-fact remains the sole judge of the credibility of the witnesses and
the weight to give their testimony.  Keller, 168 S.W.3d at 819.  It may choose to believe one witness and
disbelieve another; we may not impose any opinions to the contrary or
substitute our judgment for that of the jurors, "so long as the evidence
falls within this zone of reasonable disagreement."  Id. at 822.  "We consider evidence in the light most favorable
to the verdict, and indulge every reasonable inference that would support
it."  Id.  We conclude that the evidence is factually
sufficient to support the jury finding.  

1.  The Motion for Directed Verdict

As a sub-issue under its
issues relating to sufficiency of the evidence, QD urges that the trial court
erred in failing to grant its motion for directed verdict.








QD argues in its brief that
the trial court had the duty to instruct a verdict because the evidence was
insufficient as a matter of law to show the element of constructive
discharge.  Whether an employee would
feel forced to resign is case and fact specific, but the following factors are
relevant, singly or in combination:  (1)
demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4)
reassignment to menial or degrading work, (5) reassignment to work under a
younger or less experienced/qualified supervisor, (6) badgering, harassment, or
humiliation by the employer calculated to encourage the employee's resignation,
or (7) offers of early retirement (or continued employment on terms less
favorable than the employee's former status). 
Haley v. Alliance Compressor LLC, 391 F.3d 644, 649-50 (5th Cir.
2004) (citing Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir.
2001)).

At trial, QD's motion for
directed verdict was brief and encompassed only the following:

The evidence has established, right through the
plaintiff himself, that, one he did not mitigate damages for the first two
weeks; secondarily, he resumed employment with the first application that he
made with Humana Health Care Service; thirdly, he was re-offered his job at
Quality Dialysis when Mr. Adams terminated his position, and he stated that he
walked off the job.  He said he was
forced off the job, but, nevertheless, he could have maintained a cause of
action through the Texas Commission or EEOC.[3]  While being unemployed, he was re-tendered
employment, through his own testimony, and he obtained another job.  There are no damages nor causation to address
for the jury, Your Honor.

 








None of the concerns raised in the foregoing motion
address any of the factors to be considered in evaluating whether or not
constructive discharge took place, and they do not conform to the complaint
being made on appeal.  Under rule 33.1 of
the Texas Rules of Appellate Procedure, an appellant must make a timely
objection, stating the specific grounds for the ruling sought, and receive a
ruling from the trial court on that objection in order to preserve error for
appellate review.  Tex. R. App. P. 33.1; Wal‑Mart
Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999).  Even constitutional errors, such as due
process complaints, are waived if not raised first in the trial court.  See Birdo v. Ament, 814 S.W.2d 808,
811 (Tex. App.BWaco 1991, writ denied).

We conclude that QD did not
preserve error on the question of constructive discharge vis-a-vis the motion
for directed verdict on the basis set forth in its brief.[4]


2.  Motion for Judgment Notwithstanding the
Verdict

As a second sub-issue, QD
contends the trial court erred in overruling its motion for judgment
notwithstanding the verdict, urging that as a matter of law there was no
evidence upon which the jury could rely for its finding of age discrimination.  The standard of review for a trial court's
denial of a motion for judgment notwithstanding the verdict is to determine
whether the evidence conclusively proves a fact that establishes a party's
right to a judgment as a matter of law.  Oyster
Creek Fin. Corp. v. Richwood Invs. II, Inc., 176 S.W.3d 307, 322 (Tex. App.BHouston [1st Dist.] 2004, pet. denied) (citing Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex.
1991)).  If so, then the trial court
erred in denying the motion for judgment notwithstanding the verdict.  Id. 








The record does not include
any motion for judgment notwithstanding the verdict.  However, QD did file a motion for new trial,
in which it contended that (1) the evidence conclusively proved that Adams was
not discharged, (2) age was not a motivating factor,[5]
and (3) the jury finding was also against the great weight and preponderance of
the evidence.  








The
standard of review for a trial court's denial of a motion for new trial is
abuse of discretion and, absent manifest abuse of discretion, its action will
not be disturbed on appeal.  Equitable
General Ins. Co. v. Yates, 684 S.W.2d 669, 670 (Tex. 1984) (citing Neunhoffer
v. State, 440 S.W.2d 395, 397 (Tex. Civ. App.BSan Antonio 1969, writ ref'd n.r.e.)).[6]  In
reviewing a trial court decision under an abuse of discretion standard, we must
determine whether the trial court acted without reference to any guiding rules
or principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  The exercise of discretion is within the sole
province of the trial court, and an appellate court may not substitute its
discretion for that of the trial judge.  Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985).  An abuse of discretion occurs only when the
trial court reaches a decision that is "so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law."  Id. at 917.  We will affirm the judgment of the trial
court if that judgment can be upheld on any reasonable theory supported by the
evidence.  Ex parte E.E.H., 869
S.W.2d 496, 497-98 (Tex. App.BHouston [1st Dist.] 1993, writ denied); Harris
County Dist. Attorney's Office v. Burns, 825 S.W.2d 198, 200 (Tex. App.BHouston [14th Dist.] 1992, writ denied).  We consider only the evidence most favorable
to the judgment, and if there is some evidence to support the judgment, we will
affirm.  State v. Knight, 813
S.W.2d 210, 211 (Tex. App.BHouston [14th Dist.] 1991, no writ). 

We have already determined
that the evidence was legally and factually sufficient to support the jury's
finding.  We reject QD's contention that
the evidence "conclusively proved" that the jury's answer to question
number one was "wrong."  We
also conclude there was no abuse of discretion in denying the motion for new
trial.  Accordingly, we overrule QD's
issues one and two, and their respective sub-issues. 

B.  The Finding of Malice

In
its third issue, QD contends that the jury's finding of malice is against the
great weight and preponderance of the evidence. 
There is no contention that the jury was not properly instructed either
in the burden of proof or in the definition of malice. 








QD
argues that the employer must be shown to have engaged in a discriminatory
practice with malice or with reckless indifference to the rights of an aggrieved
individual, and that this requires "subjective knowledge" on the part
of the employer that it is engaged in discrimination.  However, case law provides that "the
terms 'malice' or 'reckless indifference' pertain to the employer's knowledge
that it may be acting in violation of federal law, not its awareness that it is
engaging in discrimination."  Kolstad
v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999).  An employer must at least discriminate in the
face of a perceived risk that its actions will violate federal law to be liable
in punitive damages.  Id.  

Malice
is defined as ill will, evil motive, or gross indifference or reckless
disregard of the rights of others, and may be established by direct or
circumstantial evidence.  Gren Indus.,
Inc. v. Brown, 2001 Tex. App.LEXIS 1190, at *16 (Tex. App.BDallas 2001)
(designated as opinion)  A plaintiff is
not required to prove the defendant acted with personal spite, but instead that
the defendant committed wrongful acts in reckless disregard of another's rights
and with indifference as to whether that party would be injured.  Id. 
Evidence of egregious or outrageous acts may serve as evidence
supporting an inference of the requisite "evil motive."  Kolstad, 527 U.S. at 538 (citing 1 T. Sedgwick, Measure of Damages '' 366, 368, pp. 528,
529 (8th ed. 1891) ("The allowance of exemplary damages depends upon the
bad motive of the wrong‑doer as exhibited by his acts."); 2 J. Sutherland, Law of Damages ' 394, p. 1101 (3d ed.
1903) ("The spirit which actuated the wrong‑doer may doubtless be
inferred from the circumstances surrounding the parties and the
transaction.")).[7]  








In
a case involving similar issues of an individual approaching retirement age,
with attendant concerns relating to medical costs and benefits, our sister
court concluded that this awareness, coupled with issues of credibility of the
witnesses, supported the theory that lay-offs would generate savings "on
the costs associated with higher paid, long‑term employees and retirees.
. . .  The jury was within its power to question
the veracity of USAA's evidence, and to conclude that USAA acted with
malice."  U.S. Auto. Ass'n v.
Brite, 161 S.W.3d 566, 575 (Tex. App.BSan Antonio 2005, pet.
filed).  Here, the jury was similarly provided with
evidence of alleged wrongful acts, and with evidence that challenged the
credibility of QD representatives, from which it was entitled to infer
malicious intent.  Sufficient evidence existed to enable the jury, as the sole finder of
fact and the sole judge of the credibility of the witnesses, to conclude that
QD acted with malice.  See Keller,
168 S.W.3d at 819, 822.  We cannot
conclude that the jury's finding was against the great weight and preponderance
of the evidence.

1.  Opinion Testimony of Adams

As a sub-issue related to
the finding of malice, QD argues that the trial court erred in admitting
certain opinion testimony of Adams, specifically Adams's statement that,
"after the [hit-and-run] accident, things started going downhill for me."  On appeal, QD argues that the trial court
erred in permitting this opinion testimony because it was nothing more than
speculation.








First, the admission and
exclusion of evidence is committed to the trial court's sound discretion.  Oyster Creek, 176 S.W.3d at 316; Moore
v. Bank Midwest, N.A., 39 S.W.3d 395, 401 (Tex. App.BHouston [1st Dist.] 2001, pet. denied).  We must uphold the trial court's
evidentiary ruling if there is any legitimate basis for the ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998) (citing State Bar of Tex. v. Evans, 774 S.W.2d
656, 658 n.5 (Tex. 1989)).  Moreover, we
will not reverse a trial court for an erroneous evidentiary ruling unless the
error probably caused the rendition of an improper judgment.  See Tex.
R. App. P. 44.1; Malone, 972 S.W.2d at 43; see also Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

Secondly, to preserve error
for appeal a party must have made a timely, specific objection at the earliest
possible opportunity.  Tex. R. App. P. 33.1; Oyster Creek,
176 S.W.3d at 316.  Failure to object in
a timely and specific manner during trial forfeits complaints about the
admissibility of evidence.  Oyster
Creek, 176 S.W.3d at 316; Atlantic Richfield Co. v. Misty Prods., Inc.,
820 S.W.2d 414, 421 (Tex. App.BHouston [14th Dist.] 1991, writ denied).  Here, no objection was raised at trial to the
statement made by Mr. Adams based on speculation.  The exchange was as follows:

A:  And he ran into the truck, and it was a hit
and run.

Q:  You talked to the officer about that; is that
right?

A:  Yes, I sure did.

Q:  Okay. 
Do you think someone blamed you for causing that accident?

Counsel:  I Object. No proper predicate being laid.

Court:  What's the specific legal objection?

Counsel:  It calls for speculation.

Court:  Sustained.

Q:  The reason
you bring that upBhelp me understand. 
How do you think that plays into this?

Counsel:  Your Honor, that's leading.

Court:  Overruled. 
You can answer that question.

A: That plays into that because after the accident,
things started going downhill for me.








Q: Mr. Adams, did you
cause that accident?

A: No I did not.

Q: You weren't found at
fault in it?

A: I wasn't at fault.

Q: The fact the
accident occurred had nothing to do with your age?

A: Not anything to do
with my age.

 

An objection based on speculation was raised to a
preceding question ("Do you think someone blamed you for causing that
accident?") and that objection was sustained.  Adams was then asked, "How do you think
that plays into this?"   The only
objection raised to this question, which was overruled, was
"leading."  Even if QD had
raised a timely and proper objection, we conclude Adams could properly testify
to his own perceptions, and the comment in issue was rationally based on his
perception.  See Tex. R. Evid. 701 (providing that the
opinion of a lay‑witness is admissible if based on his perception and if
his opinion helps in determining a fact in issue); Sierad v. Barnett,
164 S.W.3d 471, 483 (Tex. App.BDallas 2005, no pet.).  Further, in light of other evidence tendered,
we cannot conclude that the comment in question probably caused the rendition
of an improper judgment.  We conclude the
trial court did not abuse its discretion in admitting Adams's opinion
testimony, and we overrule QD's sub-issue on this point.  

2.  Hearsay Testimony

As a second sub-issue, QD
claims that the trial court erred in admitting testimony of comments made by an
insurance agent.  The exchange between
Adams and counsel was as follows:








Q:  Now, you
were in a meeting when the insurance representative we talked about came to a
staff meeting, were you?

A:  Yes, I
was.

Q:  Did he
mention your age in that meeting?

A:  He
mentioned it afterB. . . He questioned me and saying, "Are you
still here?"[8]


Q:  Meaning
were you still there from the time that he talked about Aetna, maybe, until you
talked about the new area?

A: 
Right.  From the time we got on
Aetna and he left, I didn't see him any more until he came with United Health
Care.

A:  What, if
anything, did he say about your age?

A:  He
say,"I don't believe you're going to be accepted, because you're too
old."

Q:  You're too
old?

A:  But, he said,
he said, "Don't tell everybody I said that."  Everybody laughed, because we was in a
meeting.

A:  Was Star
Stell [sic] [Genevieve Barclay] in that meeting?

Q:  Yeah.  Everyone was there.

Q:  Was she in
the meeting when he said, "Don't tell anyone I said that?"

A:  She was
there. I don't know whether she heard it or not, but she was there.

Q:  Did a lot
of the people laugh?  Did she hear them
laughing?

 








Hearsay is "a
statement, other than one made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter
asserted." Tex. R. Evid.
801(d); Sierad, 164 S.W.3d at 484. 
If the record discloses a legitimate basis for a trial court's
evidentiary ruling, we uphold the ruling. 
Oyster Creek, 176 S.W.3d at 317; Malone, 972 S.W.2d at
43.  However, here no objection was
raised at trial on any basis to the testimony in issue, and therefore there was
no evidentiary ruling.  We conclude that
QD failed to preserve error on this sub-issue for appeal.  Tex.
R. App. P. 33.1; Oyster Creek, 176 S.W.3d at 316.  Further, in light of other evidence tendered,
we cannot conclude that the testimony in question probably caused the rendition
of an improper judgment.  

3.  Jury Charge Error

As a final sub-issue under
the primary issue that the finding of malice was against the great weight and
preponderance of the evidence, QD asserts that the trial court erred in
including the malice and exemplary damages questions in the jury charge. 

The test for preservation of
error concerning the jury charge is whether the party made the trial court
aware of the complaint, timely and plainly, and obtained a ruling.  See State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 240‑41 (Tex. 1992); Melendez v.
Exxon Corp., 998 S.W.2d 266, 281 (Tex. App.BHouston
[14th dist.] 1999, no pet.).  The
standard of review for alleged jury charge error is abuse of discretion.  Tex. Dep't of Human Servs. v. E.B.,
802 S.W.2d 647, 649 (Tex. 1990); Rosell v. Cent. W. Motor Stages, Inc.,
89 S.W.3d 643, 653 (Tex. App.BDallas 2002, pet. denied).  To determine whether alleged jury charge
error is reversible, we consider the parties' pleadings, the evidence presented
at trial, and the charge in its entirety. 
See Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 663 (Tex.
1999).  Error in the jury charge is
similarly reversible only if it probably caused the rendition of an improper
judgment or probably prevented the appellant from properly presenting the case
on appeal.  See Tex. R. App. P. 44.1(a); Timberwalk
Apts. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998). 








At trial, during the charge
conference and following discussion over the form of question number one (in
which QD's counsel contended there was no evidence that Adams was discharged),
QD participated in the following exchange: 


Court:  Any
other objections to the form of the charge?

Counsel: 
We're going to object, Your Honor, to the exemplary damage.

Court:  Just
to the inclusion of that?

Counsel:  Yes.

Court:  That
objection is overruled.  Any other
objections to the form or substance of the charge?

Counsel: 
No.  The rest of it B it's out of the pattern jury instructions.

 

Clearly, at trial there was
no objection to inclusion of the question on malice.[9]  Because QD did not apprise the trial court of
its complaint about inclusion of the question on malice during the charge
conference and did not obtain a ruling, it did not preserve this complaint for
appeal.  Payne, 838 S.W.2d at
241.  

Moreover, although QD argues
on appeal that there was no admissible evidence that QD acted with malice, and
that inclusion of the jury question was erroneous and probably caused the jury
to improperly award exemplary damages, we have already determined the evidence
was legally and factually sufficient to place the question before the jury and
to sustain its finding.  We overrule QD's
third issue.

C.  Exemplary Damages Award

QD's final issue on appeal
is that the award of exemplary damages is excessive.  Here, the exemplary damage award is equal to
the amount of actual damages awarded.  








We have already noted that
an appellant waives any complaint about the trial court's judgment that is not
timely raised.  Tex. R. App. P. 53.2(f); Bunton v. Bentley, 153 S.W.3d
50, 53 (Tex. 2004); Johnson v. Lynaugh, 796 S.W.2d 705, 707 (Tex. 1990)
("If the matter complained of originated in the trial court, it should
have been preserved for appellate review in the trial court").  No issue relating to the amount of the
exemplary damages award was raised in the motion for new trial and error, if
any, has not been preserved. 

Even if the issue had been
properly raised, the amount of such an award rests largely in the discretion of
the jury and will not be set aside as excessive unless the amount is so large
as to indicate that it is the result of passion, prejudice, or corruption, or
that the evidence has been disregarded.  Ethicon,
Inc. v. Martinez, 835 S.W.2d 826, 835-36 (Tex. App.BAustin 1992, no pet.); Crutcher‑Rolfs‑Cummings,
Inc. v. Ballard, 540 S.W.2d 380, 389 (Tex. Civ. App.BCorpus Christi 1976, writ ref'd n.r.e.).  Whether a jury award is excessive is a
question of fact.  Alamo Nat'l Bank v.
Kraus, 616 S.W.2d 908, 910 (Tex. 1981).

Exemplary damages must be
reasonably proportioned to actual damages.  Id.  When
reviewing an exemplary damage award, we consider (1) the nature of the wrong,
(2) the character of the conduct involved, (3) the degree of culpability of the
wrongdoer, (4) the situation and sensibilities of the parties concerned, and
(5) the extent to which such conduct offends a public sense of justice and
propriety.  Id.[10]








We conclude the award of
exemplary damages in this case is not excessive or the likely result of
passion, prejudice, or corruption, or that the evidence has been
disregarded.  See Martinez, 835
S.W.2d at 835-36; Ballard, 540 S.W.2d at 389.[11]  QD's fourth issue is overruled.  

V.  Conclusion

We affirm the trial court's
judgment in all respects.

 

ERRLINDA CASTILLO      

Justice

 

Memorandum Opinion
delivered and filed

this the 8th day of
June,  2006.

 

 

 

 











[1] When Adams was first hired,
patient census was approximately five to six. 
By the time he left, QD's patient census averaged in the mid to high
thirties.  QD experienced a lot of growth
in 1999 and 2000.  Genevieve Barclay
testified that QD tried to keep its patient load at a minimum of thirty-eight,
and she believed it had been at either thirty, perhaps thirty-four or
thirty-five patients in the fall of 2001, but was not certain.  She also testified that QD was profitable and
made money in 2001, 2002, and 2003. 





[2] The employee has the burden of
establishing a prima facie case of unlawful discrimination.  Tex. Dep't of Human Servs. v. Hinds,
904 S.W.2d 629, 636 (Tex. 1995) (citing Tex. Dep't of Cmty. Affairs v.
Burdine, 450 U.S. 428, 252-56 (1981)). 
The employer then has the burden of producing evidence of legitimate
reasons for its actions.  Id.  The employee has the burden of rebutting this
evidence.  Id.  While the burden of production shifts, the
ultimate burden of persuasion remains on the employee.  Id.  Texas courts of appeals have adopted similar
procedures in such cases.  Id.
(citing Adams v. Valley Fed. Credit Union, 848 S.W.2d 182, 185‑87
(Tex. App.BCorpus Christi 1992, writ denied)
(jury in age discrimination case must be instructed on the shifting burdens
prescribed by Burdine)).  





[3] We note that while an issue was
initially raised before the trial court that Adams had not timely filed his
lawsuit, based upon the dates of his right to sue letters from the EEOC and the
TCHR, there is no such issue on appeal. 
The right to sue letters are part of the record, and there is no
contention that Adams failed to exhaust administrative remedies.  





[4] Even if error had been preserved
on the issue presented, we have already determined the evidence was legally
sufficient to place the question of constructive discharge impliedly before the
jury in the first question of the jury charge. 





[5] QD argued in its motion for new
trial that since Adams was hired when he was sixty-three years old and received
salary increases during his tenure with QD, age could not have been a
factor:  "If age was a motivating
factor Adams would not have been hired initially." 





[6] The latitude of the trial court's
discretion is addressed in rule 320 which provides that "[n]ew trials may
be granted and judgment set aside for good cause, on motion or on the court's
own motion on such terms as the court shall direct."  Equitable General Ins. Co. v.
Yates, 684 S.W.2d 669, 670 (Tex. 1984) (citing Tex.
R. Civ. P. 320).





[7] See also Koehler v Sircovich,
269 S.W. 812, 818 (Tex. Civ. App.BGalveston 1925, no writ) ("The existence of an evil
intent can seldom if ever be shown by direct evidence, and evidence of facts
and circumstances from which it is reasonably inferable is sufficient to show
its existence.").





[8] Adams was the only employee still
with QD from when the same agent had come to speak about the prior insurance
coverage.  





[9] We acknowledge that in the motion
for new trial, counsel argued that "the Court erred in overruling
Defendant's Objection to the charge;" however, the record fails to include
any such objection to question number 3. 





[10] There is no set rule of ratio
between the amount of actual and exemplary damages that will be considered
reasonable.  Alamo Nat'l Bank v. Kraus,
616 S.W.2d 908, 910 (Tex. 1981); Beacon Nat'l Ins. Co. v. Reynolds, 799
S.W.2d 390, 398 (Tex. App.BFort Worth 1990, writ denied); Aetna Cas. & Sur. Co.
v. Joseph, 769 S.W.2d 603, 607 (Tex. App.BDallas 1989, no writ).  The ratio of exemplary to actual damages here
was 1 to 1.  See Donnel v. Lara,
703 S.W.2d 257, 262 (Tex. App.BSan Antonio 1985, writ ref'd n.r.e.) (approving ratio of
2250 to 1); Beacon, 799 S.W.2d at 398 (approving ratio of 28 to 1); Wal
Mart Stores, Inc. v. Kee, 743 S.W.2d 296, 298-99 (Tex. App.BTyler 1987, no writ) (approving
ratio of 5.56 to 1). 





[11] No issue has been raised
contending that the award is unconstitutionally excessive.  See BMW of N. Am. v. Gore, 517
U.S. 559, 574-75 (1996); Owens Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 45 (Tex. 1998).